IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
September 4, 2001 Session

## RONALD STRICKLAND v. TAMI M. FRANKLIN

**Appeal from the Juvenile Court for Houston County**
**No. 1828      William S. Vinson, III, Judge**

---

**No. M2001-00331-COA-R3-CV - Filed November 2, 2001**

---

This appeal involves the custody of a child born out of wedlock to a mother who was at all times married to another man. The trial court awarded the mother custody. The father of the child now appeals. We have determined that the trial judge did not err in failing to recuse himself and properly awarded custody to the mother. Accordingly, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court Affirmed**

WILLIAM B. CAIN, J., delivered the opinion of the court, in which BEN H. CANTRELL, P.J., M.S. and DON R. ASH, SP. J., joined.

Mark A. Rassas and Julia P. North, Clarksville, Tennessee, for the appellant, Ronald Strickland.

John T. Maher, Clarksville, Tennessee, for the appellee, Tami M. Franklin.

### OPINION

At the time of the parties' relationship and at the time of the trial, Mrs. Franklin was a married woman. The biological father, Mr. Strickland, is a retired military man and was married at the onset of his relationship with Mrs. Franklin. He has since divorced. He resides in Tennessee Ridge, Tennessee, with his two children. Mrs. Franklin has her G.E.D. and has attended some college classes. Jim Franklin, Mrs. Franklin's husband ("Mr. Franklin"), is in the military. At the time of trial, Mr. Franklin had been re-assigned to Fort Bragg, North Carolina. Mrs. Franklin plans to relocate to North Carolina with her five (5) children. Two (2) of the children are the biological children of Mr. Franklin. The three (3) other children, including the child at issue in the present lawsuit, are the biological children of other men.

Mrs. Franklin met her husband, Jim Franklin, when her first child, whom she gave birth to at age sixteen, was five months old. She and Mr. Franklin married before her child, Tiffany, turned one year old. After the Franklin's marriage, Tiffany's last name was changed to Franklin. Mr. and Mrs. Franklin had a son together in 1988, but separated in 1991. During the time the Franklins were

separated, Mrs. Franklin became pregnant by another man. The Franklins reconciled prior to the child, Brainna's, birth. They then had a second child together, Jennifer.

Mr. Strickland and Mrs. Franklin met in approximately 1994 when their children were in school together. They eventually became romantically involved and Mrs. Franklin moved into Mr. Strickland's home in October 1998 with her four (4) children. Also in 1998, Mr. Strickland divorced his wife. In April 1999, Mrs. Franklin informed Mr. Strickland that she was pregnant. Mrs. Franklin reconciled with Mr. Franklin and moved back to the marital home in 1999.

Since Mr. Strickland's retirement, he has performed contract work on army aircraft and has also worked as a self-employed auto mechanic. He receives disability as a result of an injury sustained in Vietnam and as the result of having been injured on the job as a civilian contractor. He receives additional income from rental property. Mr. Strickland testified at trial that if he is awarded custody of his child, he plans to fully retire so that he can raise the child on his own.

On August, 20, 1999, Mr. Strickland filed a Petition for Legitimization of the unborn child and requested that the trial court determine custody, visitation and child support. Mrs. Franklin denied that the unborn child was fathered by Mr. Strickland in her answer. Mr. Strickland filed a motion for paternity testing and on February 9, 2000, the trial court ordered the paternity testing upon the birth of the child. Mr. Strickland set up the paternity testing and paid for it.

On February 13, 2000, the child, Jacob T. Franklin was born. Paternity testing was completed determining that Mr. Strickland is the natural father of the child. After paternity was established, Mr. Strickland sought visitation and asked that the child's last name be changed to reflect the parentage. He also sought appointment of a guardian ad litem. A guardian ad litem was appointed on May 25, 2000.

The trial of this matter occurred on August 31, 2000. The issues at trial were custody, visitation, and support. The trial court did not read the report regarding custody filed by the guardian ad litem. The trial court awarded custody of the parties' minor child, Jacob Strickland, to the mother and set visitation, also ordering Mr. Strickland to pay child support. The father filed a Motion for a New Trial and Notice of Appeal. On November 7, 2000, counsel for the father made a written inquiry to the trial court regarding a possible attorney-client relationship between the mother and the trial judge in his capacity as part-time attorney. On December 5, 2000, the Motion for a New Trial was denied, and the Motion to disqualify the trial judge was denied.

The issues, as presented by the appellant, are as follows:

I.     Did the trial judge erroneously fail to recuse himself because he had a prior attorney-client relationship with the appellee's husband?
II.    Did the trial court misapply and fail to consider the appropriate factors for determining the best interest of the child in the custody determination?
III.   Did the trial court erroneously fail to consider the report of the guardian ad litem?

IV.     Did the trial court erroneously apply the tender years doctrine?
V.      Did the trial court erroneously order payment of child support through the Clerk of the Court.

To the extent that the issues presented involve questions of fact, we review the trial court's ruling de novo with a presumption of correctness. Tenn. R. App. P. 13(d). Accordingly, we may not reverse the court's factual findings unless they are contrary to the preponderance of the evidence. Further, a trial court is vested with broad discretion in matters of child custody, and an appellate court will not interfere with a decision of the trial court except upon a showing of erroneous exercise of that discretion. *Hoalcraft v. Smithson*, 19 S.W.3d 822, 827 (Tenn. Ct. App. 1999). This Court will not disturb custody decisions unless they are based on a material error of law or the evidence preponderates against them.

## I. Recusal

The first issue we address is whether the trial judge abused his discretion in not recusing himself from this case because of a prior attorney-client relationship he had with the appellee's husband. In *Davis v. Liberty Mutual Ins. Co.*, 38 S.W.3d 560 (Tenn. 2001), the Tennessee Supreme Court clearly stated the law with regard to recusal:

> Given the importance of impartiality, both in fact and appearance, decisions concerning whether recusal is warranted are addressed to the judge's discretion, which will not be reversed on appeal unless a clear abuse appears on the face of the record. See *State v. Hines*, 919 S.W.2d 573, 578 (Tenn. 1995). A motion to recuse should be granted if the judge has any doubt as to his or her ability to preside impartially in the case. *See id.* at 578. However, because perception is important, recusal is also appropriate "when a person of ordinary prudence in the judge's position, knowing all of the facts known to the judge, would find a reasonable basis for questioning the judge's impartiality." *Alley v. State*, 882 S.W.2d 810, 820 (Tenn. Crim. App. 1994). Thus, even when a judge believes that he or she can hear a case fairly and impartially, the judge should grant the motion to recuse if "the judge's impartiality might reasonably be questioned." Tenn. Sup. Ct. R. 10, Canon 3(E)(1). Hence, the test is ultimately an objective one since the appearance of bias is as injurious to the integrity of the judicial system as actual bias. *See Alley*, 882 S.W.2d at 820.

*Davis*, 38 S.W.3d at 564-65.

The trial judge in this matter is a part-time general sessions judge and practices law part-time. The trial judge did not recall having an attorney-client relationship with Mr. Franklin or with Mrs. Franklin. However, after he reviewed his records in his law office, he found that he had an attorney-client relationship with Mr. Franklin. He stated that Mr. Franklin was a client of his in 1990 for a brief period prior to his taking the bench in a matter unrelated to the present case. Further, he stated that he has not performed legal services for Mr. Franklin since that time. There is nothing in the

record that indicates the trial judge had a personal bias or prejudice, nor that he failed to render an impartial decision regarding the issues at trial. We are of the opinion that the trial judge did not abuse his discretion in denying the motion to recuse. We find no abuse of discretion and conclude that this issue is without merit.

## II. Custody

The next issue is whether the trial court erred in awarding custody to the mother. The various factors to consider in custody determinations are set out in Tennessee Code Annotated section 36-6-106. After applying the factors to the present case, the trial court determined that both parents are fit to have custody of the child but found it in the best interest of the child to be with the mother. On September 19, 2000, the court found:

> The Court finds that after considering all the evidence, testimony, argument of counsel, and reviewing the factors enumerated in T.C.A. 36-6-106, that it is in the best interest of the minor child that he be placed in the sole care and custody of Tami M. Franklin, with Ronald N. Strickland having visitation rights.
> . . . .
> The Court will reconsider the issue of visitation with the understanding that Ms. Franklin will be relocating to Fort Bragg, North Carolina, if the parties are unable to reach an agreement.

The trial court further set visitation and child support according to the Tennessee Child Support Guidelines.

Choosing the custodial parent that will be in the best interests of the child requires a test of comparative fitness. *Bah v. Bah*, 668 S.W.2d 663, 666 (Tenn. Ct. App. 1983). Where both parents are fit and the question is close, the appellate courts must give great deference to the trial judge's decision *Gaskill v. Gaskill*, 936 S.W.2d 626 (Tenn. Ct. App. 1996).

Trial courts are vested with wide discretion in child custody matters and appellate courts will not interfere except upon a showing of erroneous exercise of that discretion. *Hoalcraft v. Smithson*, 19 S.W.3d 822, 827 (Tenn. Ct. App. 1999); *Koch v. Koch*, 874 S.W.2d 571, 575 (Tenn. Ct. App. 1993). Upon careful examination of the record, this Court finds that the evidence does not preponderate against the trial court's ruling and affirms the award of custody to the appellee.

## III. Guardian ad Litem

The appellant moved the trial court to appoint a guardian ad litem for the minor child. The trial court appointed Drew W. Taylor to act as the guardian ad litem and represent the interests of the minor child. Mr. Taylor testified that the individuals he spoke to during his investigation were going to be called as witnesses at trial. Further, Mr. Taylor testified, "[i]t's my feeling that any light that I could shed on the matter is going to be brought out through testimony of the witnesses. As this

point, I really don't see where my opinion is going to be of any great value to the Court." The attorneys conceded that the guardian was not needed and he was allowed to withdraw.

The transcript of the proceedings indicates that the trial court was provided evidence introduced by both parties as it relates to the comparative fitness of each parent to be the custodial parent. Assuming, arguendo, that the report of the guardian ad litem should have been admitted, we conclude that the failure of the court to admit the guardian ad litem's report, was, at the most, non-reversible error. See Tenn. R .App. P. 36(b).

## IV. Tender Years Doctrine

The appellant argues that the trial court erroneously applied the tender years doctrine in the determination of custody. When the comparative fitness analysis was adopted in *Bah v. Bah*, the court stated "[t]o the extent the 'tender years' doctrine has continued efficacy it is simply one of many factors to be considered in determining custody, not an unyielding rule of law." *Bah*, 668 S.W.2d at 666. In 1997, the legislature amended Tennessee Code Annotated section 36-6-101(d) to state that "[i]t is the legislative intent that the gender of the party seeking custody shall not give rise to a presumption of parental fitness or cause a presumption or constitute a factor in favor or against the award of custody to such party." Tenn. Code Ann. §36-6-101(d) (Supp. 2000); see also Tenn. Code Ann. §36-6-412 (Supp. 2000). Thus, a mother of a child of tender years is not afforded a presumption of parental fitness. *Varley v. Varley*, 934 S.W.2d 659, 666 (Tenn. Ct. App. 1996). There is no evidence in the record to indicate that the trial court relied on the tender years doctrine.

## V. Imposition of an Income Assignment

The final issue focuses on the trial court's imposition of an income assignment in this case. The trial court ordered:

> Said payments will be made by income assignment. The payments may be made to the Central Child Support Receiving Unit . . . . At the current rate of child support there is an arrearage of One Thousand Eight Hundred Eighteen Dollars . . . . Based on the fact that RONALD N. STRICKLAND paid for paternity testing and arranging same, he is given credit for $585.00 creating an arrearage of $1,233.00.

The question here is whether the trial court may, in its discretion, order an obligor parent to pay child support through the trial court clerk. The Child Support Enforcement Act of 1985 established procedures for wage assignments. See Tenn. Code Ann. § 36-5-501. The Western Section of this Court addressed this issue in *Terrell v. Terrell*, No. 02A01-9610-CV-00254, 1997 WL 576536, at *6 (Tenn. Ct. App. Sept. 18, 1997), wherein the court stated:

> Finally, we reject the Husband's argument that the trial court erred in ordering him to pay child support to the Wife by income assignment. By statute, the trial court was required to order the Husband to pay child support by income assignment, even if the

Husband was current on his child support obligations at the time of entry of the divorce decree. T.C.A. § 36-5- 501(a)(1) (Supp.1995). As pertinent, section 36-5-501(a)(1) provides that:

> For any order of child support issued, modified, or enforced on or after July 1, 1994, the court shall order an immediate assignment to the clerk of the court or the department of human services or its contractor of the obligor's wages, salaries, commissions, pensions, annuities, and other income due or to become due to the obligor. The order of assignment shall issue regardless of whether support payments are in arrears on the effective date of the order. . . . The order shall . . . include an amount necessary to cover the fee due the clerk of the court. . . .

> T.C.A. § 36-5-501(a)(1) (Supp.1995).

The only two exceptions to this requirement are:

> (A)  If, upon proof by one party, there is a written finding of fact in the order of the court that there is good cause not to require immediate income assignment and the proof shows that the obligor has made timely payment of previously ordered support in cases involving the modification of support orders. "Good cause" shall only be established upon proof that the immediate income assignment would not be in the best interests of the child. The court shall, in its order, state specifically why such assignment will not be in the child's best interests; or
> (B)  If there is a written agreement by both parties that provides for alternative arrangements. Such agreement must be reviewed by the court and entered in the record.

> T.C.A. § 35-5-501(a)(2) (Supp.1995).

> In construing the foregoing statute, we note that section 36-5-501(a) appears to presumptively require that all child support orders issued after July 1, 1994, be paid by income assignment. The trial court may waive this requirement only if the parties agree pursuant to section 36-5-501(a)(2)(B), or if the trial court makes a written finding of good cause pursuant to section 36-5-501(a)(2)(A).

*Terrell*, No. 02A01-9610-CV-00254, 1997 WL 576536, at *6-7.

The trial court ordered an assignment, and it did not err in doing so. Accordingly, we affirm the imposition of the wage assignment which is consistent with Tennessee Code Annotated section 36-5-501(a)(1).

The judgment of the court below is affirmed.  Tax the costs on appeal to the appellant.


_____
WILLIAM B. CAIN, JUDGE