# FILED

December 17, 1999

Cecil Crowson, Jr.
Appellate Court Clerk

## IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE

| | |
|---|---|
| **LETA HOALCRAFT,** | ) |
| | ) |
| | ) |
| Plaintiff/Appellant, | ) **Williamson Circuit No. 91068** |
| | ) |
| **VS.** | ) **Appeal No. M1999-01837-COA-R3-CV** |
| | ) |
| **WALTER TROY SMITHSON,** | ) |
| | ) |
| | ) |
| Defendant/Appellee. **)** | |

APPEAL FROM THE CIRCUIT COURT OF WILLIAMSON COUNTY
AT FRANKLIN, TENNESSEE
THE HONORABLE RUSS HELDMAN, JUDGE

**R. E. LEE DAVIES**
**HARTZOG, SILVA & DAVIES**
Franklin, Tennessee
Attorney for Appellant

**VIRGINIA LEE STORY**
Franklin, Tennessee
Attorney for Appellee

**REVERSED AND REMANDED**

ALAN E. HIGHERS, J.

CONCUR:

DAVID R. FARMER, J.

WILLIAM C. KOCH, J.

Mrs. Hoalcraft appeals from the trial court's order changing custody of the parties' two minor children from Mrs. Hoalcraft to Mr. Smithson in this child custody matter. For the following reasons, we reverse the trial court and order that custody of the parties' children be restored to Mrs. Hoalcraft.

## Facts and Procedural History

In January 1999, the Williamson County Circuit Court granted Mr. Smithson's request for the judge to interview the parties' children in chambers regarding a possible change of custody from Mrs. Hoalcraft to Mr. Smithson. After the interview, the trial court decided to proceed with a hearing regarding child custody. After a short hearing the following day, he awarded temporary custody to Mr. Smithson. Mrs. Hoalcraft appeals.

The parties were divorced pursuant to a final decree on December 16, 1988.[1] At that time, Mrs. Hoalcraft was awarded sole custody of the parties' two children: Callie (now age 15) and Trevor (now age 12). In addition, Mr. Smithson was ordered to pay child support to Mrs. Hoalcraft. Mrs. Hoalcraft retained custody until the trial court transferred custody in

January 1999. During the intervening years, the parties had numerous conflicts regarding the children, visitation, and child support.

In 1997, Mrs. Hoalcraft's husband was transferred to Thailand for his job with General Motors Corporation. As required by law, Mrs. Hoalcraft filed a petition in the Williamson County Circuit Court for permission to relocate the children to Thailand. Mr. Smithson opposed the motion, and filed a counter-claim requesting that he be awarded custody of the parties' children.

A hearing on the petition and counter-claim was held before Judge Bell in the Williamson County Circuit Court. At this time both children testified that, although they got along well with their mother, they wished to remain in Tennessee with Mr. Smithson. Following the hearing, an order was entered on July 3, 1997, granting Hoalcraft's request and dismissing Smithson's counter-claim. Judge Bell found that there was no material change in circumstances requiring a change in custody and that the move was not an act of vindictiveness by Mrs. Hoalcraft. Without request, Judge Bell placed the case on the review docket for the summer of 1998.

Immediately after the hearing, Mr. Smithson assaulted Mr. Hoalcraft outside the courtroom. A deputy was also assaulted by Mr. Smithson when she tried to intervene. Mr. Smithson's family also verbally threatened the Hoalcrafts with further violence in the future. Despite his obvious discontent with Judge Bell's decision, Mr. Smithson did not appeal the order. However, he did refuse to pay any further child support.

The Hoalcrafts moved to Thailand with the children in the summer of 1997, after receiving a favorable ruling in the trial court. While in Thailand, the family lived in a luxurious condo-like community with other American families. From all accounts, the children enjoyed

their life there.  Both children attended an exclusive international school where they excelled in their academics.   In addition, the children were involved in numerous extracurricular activities including band, tennis, and horseback riding. While in Thailand, the children kept in touch with Mr. Smithson through phone calls and e-mail.

Mrs. Hoalcraft and the children returned to Tennessee in the summer of 1998 to allow Smithson to exercise his visitation rights. The children spent approximately a month with Mr. Smithson and his family during the visitation.  When Mrs. Hoalcraft's sister attempted to pick up the children at the end of the visitation period, she was kept waiting for almost four hours. When the children were finally returned, their clothes were not returned. After visitation with Mr. Smithson, the children were reluctant to return to Thailand and exhibited "hateful behavior" toward Mrs. Hoalcraft and her other family members. Both children asked to remain with Mr. Smithson rather than return to Thailand.

Although the case had been set on the summer 1998 "review docket" by Judge Bell, neither Mrs. Hoalcraft nor Mr. Smithson attempted to go back to court for review as provided by the July 1997 order. Mrs. Hoalcraft's attorney did contact the judge to find out whether the parties were supposed to reappear for review.  At that time, Judge Bell indicated that review was unnecessary unless there was a problem regarding the custody. No further action was taken regarding the "review."  However, before returning to Thailand, Mrs. Hoalcraft informed the Circuit Court Clerk that she had not received any child support since June of 1997.

On September 10, 1998, pursuant to Mrs. Hoalcraft's letter, the court ordered Mr. Smithson to appear regarding contempt allegations for failure to pay child support.  In response, the day he was to appear for  contempt charges, Mr. Smithson filed a petition to change custody. In his petition, Smithson alleged that the children were unhappy in Thailand,

that he was not being informed about their progress in school, and that the children were forced to live in a motel for a month while in Tennessee. Mrs. Hoalcraft counter-claimed for child support arrearage. During this period, Judge Heldman replaced Judge Bell on the bench. All further proceedings were under Judge Heldman.

In order to pursue his petition for change of custody, Mr. Smithson filed a motion to have the children interviewed in Judge Heldman's chambers. This motion was granted, and Mrs. Hoalcraft was ordered to return the children to Tennessee for the Christmas holiday, at which time they would be interviewed in Judge Heldman's chambers. The proposed interview was set for early January 1999. There was no indication that either party expected a hearing to take place in addition to the scheduled interviews.

The trial court received a letter from the parties' children two weeks before the proposed interview. In this letter the children expressed a desire to remain with Mrs. Hoalcraft in Thailand and said that Mr. Smithson had pressured them into saying they wanted to live with him. During this period the children also made statements to other family members that they wished to live with Mrs. Hoalcraft. Both children seemed reluctant to return to Tennessee for the holiday.

In December 1998, Mrs. Hoalcraft and the children returned to Tennessee for the Christmas holiday as required by the court order. Over the holidays, the children had visitation with Mr. Smithson and his family. In early January the children appeared and testified before the judge. At this hearing, the children indicated that they wanted to live with their father and they did not want to return to Thailand. Although both of the parties' attorneys were present, Mr. Smithson and Mrs. Hoalcraft were not allowed to attend the interviews.

During the interviews, neither child expressed dissatisfaction with the Hoalcrafts or life in Thailand.  However, the children did state that Mr. Smithson was not as strict as Mrs. Hoalcraft and allowed them more privileges.  For example, the oldest child, Callie, testified that she was allowed to date and stay out without a curfew while visiting Mr. Smithson. The younger child, Trevor, was allowed to shoot guns and go hunting while in Mr. Smithson's care.   Both children stated that they wished to live with Mr. Smithson.  The children also indicated that they had been subjected to pressure by both Mrs. Hoalcraft and Mr. Smithson. In addition, Callie indicated that her mother was an alcoholic and involved in an extramarital relationship.  Both children expressed a desire to please their parents and minimize conflict.

After hearing the children's interviews, the judge decided to conduct a full hearing, set for the following day.  Mrs. Hoalcraft's attorney indicated that a hearing was not proper under the July 1997 order, but the judge decided to proceed anyway.  In addition, following the interviews, the judge indicated that he likely would allow the children to remain in Tennessee unless Mrs. Hoalcraft could show that it would be harmful for the children to do so.

The following day, the judge made a finding that the July 1997 order was not a final order and therefore the custody issue had not been resolved.  During the hearing, testimony was presented to substantiate the attack on the Hoalcrafts by Mr. Smithson following the July hearing.  In addition, testimony regarding Mr. Smithson's abusive behavior toward Mrs. Hoalcraft was offered.   All of the allegations made by Mr. Smithson in his petition to change custody were addressed.[2]  Mr. Smithson was unable to offer any viable reason for his failure to provide child support and admitted that he was frequently behind in his child support obligation.  The allegations regarding Mrs. Hoalcraft's drinking problem and extramarital affair were also refuted by testimony.

Callie also testified regarding a phone conversation between herself and Mr. Smithson that occurred in the fall of 1998. At that time, Callie expressed a desire to remain in Thailand rather than moving back to Tennessee. Mr. Smithson became enraged and told her she was "no longer a part of his family." In addition, Callie testified that Mr. Smithson had previously prevented her from calling her mother. Testimony also indicated that Callie planned an "escape route" in case things became too uncomfortable while she stayed at Mr. Smithson's residence. Testimony regarding the living conditions at both Mr. Smithson's and Mrs. Hoalcraft's home was also adduced. At this point, Mr. Smithson admitted that Callie would be sharing a room with her five year-old half-brother. Trevor would be sharing a room with his stepbrother, Drake. Drake had previously been accused of sexually molesting another child, Mr. Smithson's nephew. In contrast, both Callie and Trevor had separate rooms in Mrs. Hoalcraft's house.

After the testimony, the court ruled that the children would be allowed to remain in Tennessee with Mr. Smithson. He cited exigent circumstances because of "emotional trauma" that would result if the children were forced to return to Thailand. The judge did, however, indicate that this was only a temporary ruling until a full trial could be held. Pursuant to this finding, an order granting Mr. Smithson temporary custody was entered on January 15, 1999.[3] Mrs. Hoalcraft appeals.

On appeal, Mrs. Hoalcraft asserts that the trial court judge erred by changing custody when there was not a material change in circumstances "compelling enough to warrant a change in custody." In the alternative, Mrs. Hoalcraft asserts that even if there was a material change in circumstances, the trial court erred by failing to determine which parent would be comparatively more fit. In addition, Mrs. Hoalcraft argues that the trial court placed an undue burden on the custodial parent by requiring her to prove substantial harm to the children if the court transferred custody to the non-custodial parent. Mrs. Hoalcraft also

seeks attorney's fees on appeal.

## Analysis

In child custody cases, appellate review is de novo upon the record with a presumption of the correctness of the trial court's findings of fact. See TENN. R. APP. P. 13(d); see also Hass v. Knighton, 676 S.W.2d 554, 555 (Tenn.1984); Dalton v. Dalton, 858 S.W.2d 324, 327 (Tenn. App.1993); Winchester v. Collier, No. 02A01-9802-CV-00046, 1999 WL 250176, at *5 (Tenn. App. April 28, 1999). Trial courts are vested with broad discretion in matters of divorce and child custody, and appellate courts will not interfere except upon a showing of erroneous exercise of that discretion. Whitaker v. Whitaker, 957 S.W.2d 834, 836-837 (Tenn. App. 1997).

Mrs. Hoalcraft presents four issues on appeal. Before we can address those issues, we find it necessary to determine whether or not the order of July 3, 1997 was a final order. During the January 1999 hearing, Mr. Smithson asserted that the order was an interim order because the case had been placed upon a review docket for the summer of 1998. Mrs. Hoalcraft asserted that this was merely a procedural safeguard implemented by Judge Bell in order to deal with any problems that might arise. Judge Heldman found that the July 1997 order was not final, and therefore could be altered without a full-blown evidentiary hearing. We disagree.

An interim order is one that adjudicates an issue preliminarily; while a final order fully and completely defines the parties' rights with regard to the issue, leaving nothing else for the trial court to do. State ex rel. McAllister v. Goode 968 S.W.2d 834, (Tenn. Ct. App. 1997) citing Vineyard v. Vineyard, 170 S.W.2d 917, 920 (1942); Restatement of Judgments § 41, cmt. a (1942). Until a judgment becomes final, it remains within the court's control and may

be modified any time prior to the entry of a final judgment. <u>Stidham v. Fickle Heirs</u>, 643 S.W.2d 324, 328 (Tenn.1982). Any order that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties is not enforceable or appealable and is subject to revision at any time before entry of a final judgment adjudicating all the claims, rights, and liabilities of all parties. <u>See</u> TENN. R. APP. P. 3(a). Once an order becomes final, the proper procedure for seeking relief is through an appeal. <u>See</u> TENN. R. APP. P. 3(a).

From our reading of the record, it is clear that the order of July 1997 was intended as a final order. It disposed of all issues before the court at that time. It granted Mrs. Hoalcraft's petition regarding moving the children to Thailand, and it dismissed Mr. Smithson's custody counter-claim. We find that the simple act of placing the case on the review docket does not prevent the order from being considered final. According to testimony, the purpose of the review docket was to ensure the parties could go back to court if there was a problem between July 1997 and the summer of 1998. Neither party apparently had a problem that required the court's attention while the case was on the review docket. For the reasons stated above, we find that the order of July 3, 1997, was a final order. We now address the issues raised by Mrs. Hoalcraft in light of that finding.

## A. Material Change in Circumstances

In child custody cases, the law is well established that when a decree awarding custody of children has been entered, that decree is res judicata and is conclusive in a subsequent application to change custody unless some new fact has occurred which has altered the circumstances in a material way so that the welfare of the child requires a change of custody. <u>Long v. Long,</u> 488 S.W.2d 729 (Tenn. Ct. App.1972) In other words, once the trial court has made an initial determination with respect to custody, it cannot

entertain a subsequent petition to modify custody absent a material change in circumstances such that the welfare of the child demands a redetermination. See, e.g., Massengale v. Massengale, 915 S.W.2d 818, 819 (Tenn. Ct. App.1995). Mrs. Hoalcraft asserts that the trial court erred by changing custody to Mr. Smithson when there was not a material change in circumstances "compelling enough to warrant a change in custody."

A "material change in circumstances" justifying modification of a child custody order may include factors arising after the initial determination or changed conditions that could not be anticipated at the time of the original order. See Blair v. Badenhope, 940 S.W.2d 575, 576 (Tenn. Ct. App.1996) citing Dalton v. Dalton, 858 S.W.2d 324, 326 (Tenn. Ct. App.1993). If the trial court finds that there has been a material change in circumstances, it will then consider the petition to modify custody using a best interests standard. Woolsey v. McPherson, No. 02A01-9706-JV-00125, 1998 WL 760950, at *2 (Tenn. Ct. App. Nov. 2, 1998).

As this court has previously recognized, there is a strong presumption in favor of the existing custody arrangement. Smithson v. Eatherly, No. 01A01-9806-CV-00314, 1999 WL 548586 at *2 (Tenn. Ct. App. July 29, 1999) citing Taylor v. Taylor, 849 S.W.2d 319, 332 (Tenn. 1993). The party seeking to change the existing custody arrangement has the burden of proof to show both that the child's circumstances have materially changed in a way that was not reasonably forseeable at the time of the original custody decision and that changing the existing custody arrangement will serve the child's best interests. Geiger v. Boyle, No. 01A01-9809-CH-00467, 1999 WL 499733 at *3 (Tenn. Ct. App. July 16, 1999); citing Smith v. Haase, 521 S.W.2d 49, 50 (Tenn. 1975.); McDaniel v. McDaniel, 743 S.W.2d 167, 169 (Tenn. Ct. App. 1987); Seessel v. Seessel, 748 S.W.2d 422, 429 (Tenn. 1988); Hall v. Hall, No. 01A01-9310-PB-00465, 1995 WL 316255, at *2 (Tenn. Ct. App. May 25, 1995).

Under this standard, the primary inquiry is whether there has been a material change in the child's circumstances. Although there is no concrete definition for what constitutes a material change of circumstances, this court has enumerated several factors that should be taken into consideration when determining whether such a change has occurred. In general, the change must occur after the entry of the order sought to be modified and the change cannot be one that was known or reasonably anticipated when the order was entered. Turner v. Turner, 776 S.W.2d 88, 90 (Tenn. Ct. App. 1988); Dalton v. Dalton, 858 S.W.2d 324, 326 (Tenn. Ct. App. 1993). In addition, the material change of circumstances must be a change in the child's circumstances, not the circumstances of either or both of the parents. McCain v. Grim, No. 01A01-9711-CH-00634, 1999 WL 820216 at *2 (Tenn. Ct. App. Oct. 15, 1999). Finally, the change must affect the child's well-being in a material way. Dailey v. Dailey, 635 S.W.2d 391, 393 (Tenn. Ct. App. 1981).

Tennessee courts have based modification of child custody decrees on the following criteria: the character of the custodian; the conduct of the custodian; and the child's welfare. Townshend v. Bingham, No. 02A01-9801-CV-00019, 1999 WL 188290, at *4 -*5 (Tenn. Ct. App. Apr. 6, 1999). The child's preference is only one factor to be considered in deciding which parent acquires custody of the child. See Tenn. Code Ann. § 36-6-106[4]; Wilson v. Wilson, 987 S.W.2d 555, 564 (Tenn. App.1998); Helson v. Cyrus, 989 S.W.2d 704, 707 (Tenn. App. 1998).

While the trial judge did apparently consider some of the criteria enumerated above, he made no findings justifying a modification of a final decree. Instead, from our reading of the record, it appears that the trial court used the children's preferences as the overwhelming factor in his decision to change custody. Indeed, there was no imminent mental, physical, or emotional danger threatening the children if they remained in Mrs.

Hoalcraft's custody. The trial court relied only on so-called "exigent circumstances" to explain his decision to change custody of the children from Mrs. Hoalcraft to Mr. Smithson.

Our supreme court has defined "exigencies" under Tenn. Code Ann. § 36-6-106 as follows: facts and conditions which have emerged since the decree, new facts and changed conditions which were not determined and could not be anticipated by the decree; and that the decree is final and conclusive upon all the facts and conditions which existed and upon which the decree was made. See Smith v. Haase, 521 S.W.2d 49, 50 (Tenn.1975). We have found no such exigencies in this case. Nothing that occurred between July 1997 and January 1999 would qualify as an exigency under this standard. Therefore, for the reasons stated above, we find that the trial court erred on this issue. There was not a material change in circumstances sufficiently compelling to warrant a change in custody.

Since we have found that there was not a material change sufficiently compelling to warrant a change in custody, we find it unnecessary to address Mrs. Hoalcraft's second point on appeal. Whether or not the trial court performed a comparative fitness analysis is irrelevant at this point. Therefore, we will next address whether the trial court erred in allocating the burden of proof.

## B. Undue Burden

The party seeking a change in custody has the initial burden to show a material change of circumstances which affects the welfare of the child. Harris v. Harris, 832 S.W.2d 352, 352 (Tenn. 1992). The burden remains on the moving party to show that he or she is comparatively more fit than the party with custody under the challenged custody decree and to show that it would be in the child's best interests for the moving party to be the custodial parent. Gorski v. Ragains, No. 01A01-9710-GS-00597, 1999 WL 51141 at *4, (Tenn. Ct.

App. July 21, 1999) citing <u>Nichols v. Nichols</u>, 792 S.W.2d 713, 715 (Tenn. 1990); <u>Rust v. Rust</u>, 864 S.W.2d 52, 56 (Tenn. Ct. App. 1993). Mrs. Hoalcraft alleges that the trial court erred by placing an undue burden on her, as the custodial parent, to prove substantial harm to the children if the court transferred custody to Mr. Smithson. We agree.

The record is replete with statements by the lower court that indicate a mis-allocation of the burden of proof. For example, when discussing the pros and cons of a custody change, the court asked only, "Would the children be harmed in any way [*if Mr. Smithson were awarded temporary custody*] ?" (emphasis added.) The judge asked variations of this incorrect inquiry numerous times throughout the hearing. In fact, the correct inquiry was whether the children would be harmed in any way *if Mrs. Hoalcraft retained custody*, not if Mr. Smithson were awarded custody.

For the foregoing reasons, we find that Mrs. Hoalcraft had an undue burden placed upon her by the actions of the trial court. The initial burden should have been placed upon Mr. Smithson to show that there was a material change in circumstances warranting a change of custody. The trial court erred in its allocation of the burden of proof by requiring Mrs. Hoalcraft to prove why custody should not be changed rather than requiring Mr. Smithson to show why it should be changed.

## **Attorney's Fees on Appeal**

On appeal, Mrs. Hoalcraft also requests an award of the attorney fees she has incurred in preparing for this appeal. It is within the Court's discretion to award attorney fees if Mrs. Hoalcraft prevails on her appeal. <u>See</u> Tenn. Code Ann. §(c) 36-5-103.[5] We hold that she is entitled to attorney fees and remand this matter to the trial court to determine the amount.

## Conclusion

For the reasons set forth above, we reverse the trial court's decision changing custody from Mrs. Hoalcraft to Mr. Smithson. Mrs. Hoalcraft shall be restored as the custodial parent of the parties' children, and the children shall be returned to her care effective at the end of the current school semester. The matter is remanded for a determination of attorney fees to which she is entitled on appeal. Costs on appeal are taxed to Mr. Smithson for which execution may issue, if necessary.

_____
HIGHERS, J.

CONCUR:

_____
FARMER, J.

_____
KOCH, J.