IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
July 11, 2002 Session

## JOSEPH CHAD MEADORS v. SONYA DANIELLE (MEADORS) SHRUM

**An Appeal from the Circuit Court for Sumner County**
**No. 18107-C     C. L. Rogers, Judge**

-------

**No. M2001-02691-COA-R3-CV - Filed October 11, 2002**

-------

This case involves a petition to modify visitation. The mother and father were divorced in January 1999. By agreement, the mother was granted custody of the parties' minor child, and the father was given visitation. The divorce decree provided that the father's visitation schedule would change from week to week depending on father's fluctuating work schedule in his job as an emergency medical technician. This schedule necessitated repeated negotiating between the mother and the father to agree on the father's visitation schedule. In April 2001, the father petitioned the court for "standard" every-other-weekend visitation, without regard to his work schedule, in order to end the parties' pattern of negotiating and bickering. The trial court determined that the parties were unable to work together amicably, and ordered "standard" every-other-weekend visitation in order to minimize the interaction between the parties. The mother now appeals. We affirm, finding that the parties' inability to implement amicably the ordered visitation arrangement constituted a sufficient change in circumstances to warrant the slight modification in visitation.

### Tenn. R. App. P. 3; Judgment of the Circuit Court is Affirmed

HOLLY KIRBY LILLARD, J., delivered the opinion of the court, in which W. FRANK CRAWFORD, P.J., W.S., and ALAN E. HIGHERS, J., joined.

Andy L. Allman, Hendersonville, Tennessee, for the appellant, Sonya Danielle (Meadors) Shrum.
John R. Phillips, Jr., Gallatin, Tennessee, for the appellee, Joseph Chad Meadors.

### OPINION

Plaintiff/Appellee Joseph Chad Meadors ("Father") and Defendant/Appellant Sonya Danielle (Meadors) Shrum ("Mother"), were divorced in January 1999. Their child, Alexis Laken Meadors, was five years old at the time of the divorce. By agreement of the parties, primary custody of Alexis was awarded to Mother. The divorce decree provided that Father's visitation would vary, depending on Father's fluctuating work schedule. Father worked as an emergency medical technician and was

normally scheduled to work one 24-hour shift every three days from 8:00 a.m. until 8:00 a.m. the next day. In light of this, the original order provided that Father's visitation would:

> include the one full weekend of each month that he is not working from 8:30 a.m. on Saturday until 6:00 p.m. on Sunday. On the alternate weeks when he does not have a full weekend off, he will have the child on the Saturday or Sunday he is off that week. [Father] shall have additional visitation at reasonable times in which the parties may agree.

Less than a year later, on October 29, 1999, Mother filed a motion to modify Father's visitation, asserting that Father refused to maintain any regular visitation schedule. In her petition, Mother asked the trial court to order "standard" visitation for Father, with Alexis staying with Father on "alternate weekends from 6:00 p.m. on Friday until 6:00 p.m. on Sunday." Mother stated in her petition that, if "FATHER is working on the weekend that he has visitation, MOTHER agrees that the minor child may stay with her paternal grandparents while FATHER works." In December 1999, in response to Mother's petition, the trial court entered an order, finding a material change in circumstances which warranted a modification of the original decree. The trial court granted Father visitation every other weekend according to the following schedule:

> (a) from 6:00 p.m. Friday until 6:00 p.m. Sunday [on] the weekends he does not work on Saturday and Sunday;

> (b) from 9:00 a.m. on until 6:00 p.m. on Sunday if his alternate weekend falls on the weekend he is off work on Sunday;

> (c) from 6:00 p.m. Friday until 6:00 p.m. Saturday on the alternate weekend that FATHER is off work on Saturday;

> (d) In the event FATHER is working on the Saturday and Sunday he has alternative weekend visitation, then he has no visitation that weekend.

Thus, although Father was given a regular every-other-weekend visitation (except on weekends when he worked the entire weekend), the specific timetable of the visitation still varied, depending on Father's work schedule.

On April 24, 2001, Father filed a petition to modify his visitation schedule, asking the trial court to grant him standard visitation every other weekend without regard to his work schedule. In his petition, Father said that his parents would keep the child if his visitation fell on an "on-duty" weekend.[1] Father asserted that, since the modified order was issued in December 1999, "the parties have engaged in a continual pattern of negotiating and bickering, primarily as a result of the

---

[1]At the time Father filed his petition, he lived with his parents.

fluctuating nature of the visitation schedule." Father asked that the trial court's order also provide for summer visitation and for more specific provisions regarding holidays.

On September 24, 2001, the trial court held a hearing on the matter. Both Father and Mother testified at the hearing. Father stated that his work schedule varied from week to week, and that he had to contact Mother frequently to compare schedules and set up visitation arrangements. He indicated that Mother was not willing to accommodate his schedule, and that he did not call Mother for extra visitation because he wanted to avoid causing a controversy. He testified about arguments he had with Mother at the ball field and at the Bible school regarding the proper care of Alexis. Mother testified that she wanted Father to have visitation only when he would not be at work, so that Alexis could spend quality time with Father. She testified that she had problems getting along with Judy Meadors, Father's mother ("Grandmother"), and that she wanted Father to be at home when the child was visiting and staying with Grandmother. At the hearing, one of Alexis's teachers testified about Alexis's behavior, stating that the child had told her that Father "called her mom bad names." Another witness, Mother's sister-in-law, also testified about Alexis, observing that she is "very agitated whenever both families . . . are present."

On September 27, 2001, the trial court entered an order granting Father's petition and ordering that he have standard every-other-weekend visitation, without regard to his work schedule. The trial court's order also modified the parties' holiday and summer schedules, eliminating any language that would make Father's visitation dependent upon his work schedule. The trial court found that Mother and Father "can't simply pick the phone up and discuss this without some argument," and ordered this arrangement in order to minimize the interaction between Mother and Father.

Mother now appeals from this order. She asserts on appeal that there has not been the requisite change in circumstances to justify an order modifying visitation.

We review the trial court's decision de novo upon the record, and the trial court's findings of fact will be presumed correct unless the preponderance of the evidence is otherwise. Tenn. R. App. P. 13(d); *see Hass v. Knighton*, 676 S.W.2d 554, 555 (Tenn. 1984). The trial court's conclusions of law are afforded no such presumption. *Ganzevoort v. Russell*, 949 S.W.2d 293, 296 (Tenn. 1997). The trial court has broad discretion when deciding visitation issues. *Eldridge v. Eldridge*, 42 S.W.3d 82, 85 (Tenn. 2001); *see also Edwards v. Edwards*, 501 S.W.2d 283, 291 (Tenn. Ct. App. 1973) (stating that "the details of custody and visitation with children are peculiarly within the broad discretion of the trial judge"). A trial court's decision regarding visitation will be reversed only upon a showing that the trial court has abused its discretion. *See Suttles v. Suttles*, 748 S.W.2d 427, 429 (Tenn. 1988); *Gaskill v. Gaskill*, 936 S.W.2d 626, 631 (Tenn. Ct. App. 1996).

Under Tennessee law, once a trial court has entered an original custody decree, that decree is *res judicata* and "may not be modified unless a material change of circumstances has occurred such that the child's welfare requires a modification of the custody decree." *Hoalcraft v. Smithson*, 19 S.W.3d 822, 828 (Tenn. Ct. App. 1999). A material change in circumstances is any change

affecting the welfare of the child, including new facts or changed conditions which could not be anticipated at the time of the original order. *Id.* "If the trial court finds that there has been a material change in circumstances, it will then consider the petition to modify using the best interests standard." *Id.* The determination of the visitation arrangement that best serves the child's interests is fact specific and requires a balancing of numerous considerations, including those enumerated in Tennessee Code Annotated § 36-6-106. *See id.* at 829.

In this appeal, Mother argues that there had been no material change in circumstances that affected Alexis's welfare. She argues that the parties' inability to negotiate amicably is not significant enough to warrant a change in the child's custodial environment. Mother asserts that Father sought the modification so that Alexis could spend more time with Father's parents and other family members. Mother asserts that the modification permits Father to give his visitation to third parties, over her objection, at times when the child could be spending time with her. She argues that this interferes with her fundamental parenting rights.

From a review of the record, it is clear that the former visitation order was the source of heated arguments between these parties. Under the trial court's original order, Father's visitation changed from week to week, requiring regular contact between the parties, and inevitably leading to disagreements.[2] This constituted a sufficient change in circumstances to justify the slight modification in the visitation arrangement ordered by the trial court. The court stated that the purpose of the modification was "to fix it best I can where these parents have no real interaction, no need for any real interaction unless it's a dire emergency." Such a limitation in confrontation is certainly in the minor child's best interest. Moreover, the trial court's modification is so slight that it might better be described as a "tweaking" of the visitation schedule. It does not increase the amount of Father's visitation, and therefore has no effect whatsoever on the amount of time Mother spends with Alexis. The fact that Alexis is with the paternal grandparents while Father is at work does not affect Mother's parental rights. Mother does not allege an adverse effect on the child from spending time in the care of the grandparents. Indeed, Mother requested precisely this arrangement in October 1999, when she stated in her petition to modify that the "child may stay with her paternal grandparents while FATHER works." Under all of these circumstances, it is puzzling why Mother opposed Father's request to modify visitation and why she felt it necessary to appeal the trial court's order. We affirm the trial court's decision to modify Father's visitation arrangement.

---

[2]From a review of the testimony, it seems that when these parties have any type of contact, a dispute erupts. For example, Mother testified that she became upset with Father when he took Alexis to a medical center for a sore throat, because he did not first consult Mother. Father testified that, on another occasion, he became upset with Mother for allowing Alexis to wander away and become lost at the ball park. From the testimony presented at the hearing, the trial court admonished Mother and Father, stating that they were "still fussing with each other instead of getting on with [their] lives, and the child is going to suffer because of that."

We affirm the decision of the trial court. Costs are to be taxed to appellant, Sonya Danielle (Meadors) Shrum, and her surety, for which execution may issue, if necessary.

_____

HOLLY KIRBY LILLARD, JUDGE