IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
May 5, 2003 Session

## STEVEN ANTHONY PERRY v. KELLY LEANNE PERRY v. THELMA PERRY

**Appeal from the Circuit Court for Wilson County**
**No. 3791 DVC     Clara Byrd, Judge**

---

**No. M2002-01180-COA-R3-CV - Filed August 7, 2003**

---

The Circuit Court of Wilson County awarded custody of a minor child to the paternal grandmother. The child's mother, to whom custody had been awarded in the divorce, asserts that the facts do not support such a drastic remedy. We affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court**
**Affirmed and Remanded**

BEN H. CANTRELL, P.J., M.S., delivered the opinion of the court, in which WILLIAM B. CAIN and PATRICIA J. COTTRELL, JJ., joined.

Jon S. Jablonski, Nashville, Tennessee, for the appellant, Kelly Leanne Perry.

Debra L. Dishmon and Susan M. Merry, Lebanon, Tennessee, for the appellee, Thelma Perry.

**OPINION**

**I.**

Steven Anthony Perry and Kelly Leanne Perry were divorced by the General Sessions Court of Wilson County in October of 1997. The parties had one minor child, a daughter, born on July 27, 1996. A marital dissolution agreement adopted by the court awarded primary custody to Ms. Perry. The MDA reflected that Ms. Perry was living outside the state and that Mr. Perry was incarcerated. Nevertheless, Ms. Perry was ordered to provide the transportation for Mr. Perry to exercise visitation every third weekend of each month from 6:00 p.m. on Friday until 6:00 p.m. on Sunday. In the event that Mr. Perry could not exercise his visitation privileges, the right to exercise those privileges was given to his mother.

Ms. Perry and the child were living in Iowa with Scott Olsen. In July of 1997 Mr. Olsen had been accused of physically abusing the child. As a result, the child was removed from the home by

the Iowa Department of Human Services for a period of weeks until the Iowa DCS allowed the adults and the child to be reunited.

Within a few months of the divorce the parties began trading petitions for contempt. At least one hearing was held, and the court made some modifications to the visitation schedule but did not impose any contempt sanctions.

On November 16, 2000, Mr. Perry filed a petition for a change of custody alleging that the chaotic living conditions in Mr. Olsen's home posed a threat to the child and that the child had made statements suggesting that Mr. Olsen had physically and sexually abused her. On December 27, 2000, the court allowed Ms. Perry to retain custody but required her to remain in the state and to prevent Mr. Olsen from coming around the child.

Other contempt petitions followed. Somewhere along the way the paternal grandmother became a party, and there are orders in the record awarding custody to her. But for the majority of the time Ms. Perry apparently had custody, and for part of that time her whereabouts were unknown. Even when Ms. Perry finally surfaced she was jailed for refusing to divulge the location of the child.

The general sessions court transferred the case to the circuit court, and after a hearing on March 12 and 13 of 2002 the circuit court awarded custody to the paternal grandmother. The court found that Ms. Perry and Mr. Olsen had no credibility, but that Mr. Olsen had not sexually molested the child. The court, however, made the following findings:

> The Court finds that a substantial risk of harm from verbal and physical abuse exists if the minor child continues to reside with Mother due to Mother's lack of responsibility and credibility; due to the fact that Mother will have Scot Olson in her life as she is carrying his child and Mr. Olson's anger problem; due to Mother's attitude and inability to teach the child respect; due to Mother's inability to support the child and adequately provide for her moral upbringing and social progress, due to the risk that Mother and/or Mr. Olson will abscond with the child; and due to Mother's inability to fulfill her only obligation of getting the child to school at the proper time on a regular basis.

## II.

This is not a simple custody dispute. It is not even a grandparent visitation case. This case involves an award of primary custody to a grandparent when the parents of the child are both still living. Since the rights of parents to care for their children is a fundamental right, the state cannot interfere with that right absent a finding that the parents' custody would pose a threat of significant harm to the child. *Hawk v. Hawk*, 855 S.W.2d 573, 577 (Tenn. 1993).

> Therefore, in a contest between a parent and a non-parent, a parent cannot be deprived of the custody of a child unless there has been a finding, after notice

required by due process, of substantial harm to the child. Only then may a court engage in a general "best interest of the child" evaluation in making a determination of custody.

*In Adoption of Female Child*, 896 S.W.2d 546, 548 (Tenn. 1995).

We think the proof in the record sustains the conclusions of the trial court. Ms. Perry has elected to live with Scott Olsen,[1] and Mr. Olsen, to say the least, has a temper problem. He was arrested for child endangerment in 1997 for whipping the child, when the child was one year old. In January of 1998 Mr. Olsen was arrested and charged with serious assault. The evidence is in conflict about whether the assault was directed toward the child, but Mr. Olsen entered a guilty plea to a misdemeanor in September of 1998. In 2000 Mr. Olsen was charged with 2nd and 3rd degree harassment. He pled guilty to the 3rd degree charge and paid a fine. At the time of the trial Mr. Olsen was under a charge of harassment in Wilson County.

Mr. Olsen has been evaluated by a licensed psychologist. The psychologist concluded that anger was a powerful part of how Mr. Olsen operated and that the anger was easily triggered. Stating that Mr. Olsen said he "snapped" when he spanked the child in 1997, the psychologist, nevertheless, did not detect any sign of remorse in Mr. Olsen.

A reading of the trial transcript produces an unsettled feeling about Mr. Olsen. Viewed against his criminal background and his psychological evaluation, his testimony does nothing to inspire confidence in his respect for others or for the law. He repeatedly made veiled threats concerning violence, and his entire testimony reads like a person trying to sound like an underworld character. The trial judge had the opportunity to observe his demeanor and to assess his credibility, two important factors the trial court must consider in determining whether the child would be in danger if she and her mother lived with Mr. Olsen. *Gaskill v. Gaskill*, 936 S.W.2d 626, 631 (Tenn. Ct. App. 1996).

As for Ms. Perry, the court also had the opportunity to assess her credibility and demeanor. Finding that the mother had no credibility, the court concluded that Ms. Perry could not teach the child respect nor provide for her social progress; that there was risk that Ms. Perry and/or Mr. Olsen would abscond with the child, a threat Mr. Olsen hinted at more than once in open court. The court also found that the child had been absent from or late for school an excessive number of times when she lived with Ms. Perry and Ms. Perry's mother in the months leading up to the hearing. Ms. Perry's excuse for not performing this one responsibility was that the clocks sometime stopped because the electricity was off.

All of these factors support the conclusion that remaining with her mother would subject the child to a threat of harm.

---

[1]The record reveals that she married Mr. Olsen after the hearing below.

Ms. Perry also argues that, as a threshold matter, there had not been a material change of circumstances since the entry of the divorce decree. This argument is primarily based on the fact that Mr. Olsen's spanking occurred before the divorce. However, the rule is that a change of custody cannot be based on facts that were known or reasonably anticipated at the time of the prior order. *Hoalcraft v. Smithson*, 19 S.W.3d 822, 829 (Tenn. Ct. App. 1999). There is no evidence that at the time of the divorce anyone knew that the child was in a dangerous situation.

The judgment of the court below is affirmed and the cause is remanded to the Circuit Court of Wilson County for any further proceedings necessary. Tax the costs on appeal to Ms. Perry.

_____
BEN H. CANTRELL, PRESIDING JUDGE, M.S.