IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
August 26, 2010 Session

## JOHN STEVEN DAVIDSON, JR. v. MARY MOLTENI DAVIDSON

**Appeal from the Circuit Court for Davidson County**
**No. 07D1418      Carol Soloman, Judge**

---

**No. M2009-01990-COA-R3-CV - Filed November 15, 2010**

---

Wife appeals the trial court's designation of Husband as primary residential parent of the parties' two children and reduction of Wife's parenting time with one of the children. We vacate the trial court orders at issue and remand the case for further proceedings.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Vacated in Part and Remanded**

RICHARD H. DINKINS, J., delivered the opinion of the court, in which PATRICIA J. COTTRELL, P.S., M.J. and ANDY D. BENNETT, J., joined.

Timothy T. Ishii, Nashville, Tennessee, for the appellant, Mary Molteni Davidson.

James G. King, Nashville, Tennessee, for the appellee, John Steven Davidson.

### OPINION

## I.  Background and Procedural History

John Steven Davidson, Jr. ("Mr. Davidson") and Mary Molteni Davidson ("Ms. Davidson") were married on December 31, 1997 following a six year dating relationship. At the time of their marriage, Ms. Davidson had one child, a daughter. On April 4, 2002, Mr. and Mrs. Davidson had a son. In October 2005, Mr. and Mrs. Davidson separated.

On May 15, 2007, Mr. Davidson filed a complaint for divorce alleging indignities to his person, inappropriate marital conduct, and irreconcilable differences. Mr. Davidson also requested joint custody of both children. On August 17, 2007, Mr. Davidson filed a motion to compel Ms. Davidson to maintain him on her health insurance, a motion for default judgment, and a motion for *pendente lite* visitation. On August 21, 2007, Ms. Davidson filed

an answer and counterclaim for divorce in which she alleged inappropriate marital conduct and adultery as grounds for divorce; she further requested to be designated as the children's primary residential parent.

On September 10, 2007, the trial court entered an order, *inter alia,* granting *pendente lite* parenting time for Mr. Davidson. Specifically, with respect to Mr. Davidson's parenting time, the order stated:

> 3. The proof shows that the parties had been separated and living apart since October of 2005. Since that time, the Husband has had parenting time with the parties' two children for an average of three days and nights per week. The Husband exercised this amount of parenting time largely at the request of the Wife in order to accommodate her work schedule. This amount of parenting time shall continue as it is presently in the best interest of the children with the Husband now having parenting time with the parties' children every Sunday at 6:00 p.m. to the time the children resume school on Wednesday morning.

On February 14, 2008, Mr. Davidson filed a petition for emergency change of *pendente lite* custody, for a finding that Ms. Davidson was in criminal contempt, and for a restraining order. The petition alleged that Ms. Davidson had willfully violated the September 10, 2007 order by alienating the children's affection for him, denying him visitation with the children, and by excessively calling him. The trial court entered an order June 4, 2008, *nunc pro tunc* to March 26, 2008, finding Ms. Davidson guilty of criminal contempt and sentencing her to eighty days imprisonment for her willful and intentional violation of the court's September 10, 2007 order; however, Ms. Davidson served only eight days of her sentence.[1]

A hearing on the complaints for divorce was held on April 29, 2008 and on June 19 the court entered a Final Judgment of Divorce, granting the divorce on the parties' mutual misconduct, dividing the marital assets, and adopting a parenting plan. With respect to the children, the order stated:

> 2. With regard to the parties' two minor children, the Court makes the findings of fact pursuant to Tenn. Code Ann. § 36-6-106[2]:

---

[1] The court's order on Mr. Davidson's petition for criminal contempt was not included in the Technical Record, but was included as an exhibit to Mr. Davidson's appellate brief.

[2] While there is little substantive difference between the factors applicable to parenting plans, Tenn. Code Ann. § 36-6-404(b), and those applicable to custody determinations, Tenn. Code Ann. § 36-6-106, the

(continued...)

a.      It is in the best interest of the parties' two minor children for the Husband to be designated the Primary Residential Parent.  The proof showed that the Wife was adamant in trying to get the children to dislike their Husband [sic].  Wife insisted on calling the Husband an adulterer in front of the children and wrote it on the children's Christmas presents to Husband.

b.      Husband's love, affection, and emotional ties to the children were stronger and much healthier than the Wife's ties.

c.      Both parties have provided well for the children.

d.      Pursuant to Tenn. Code Ann. § 36-6-106 § 5, this Court has read and considered the psychological examination conducted by Ray Potts, Ed.D.  The Court is most concerned about the mental illness of Wife and how it affects the children.  The Court heard an audio recording taken during one of the parenting time exchanges where the Wife was torturing the minor son by screaming epithets at the Husband, all the while the son was crying "Stop Mom, Stop.  You do this every time".

e.      Pursuant to Tenn. Code Ann. § 36-6-106 § 8, the Court finds strong evidence of emotional abuse by the Wife toward the children.  The Wife is not able to control her anger when it concerns the Husband.

f.      The Court found § 10 of Tenn Code Ann. § 36-6-106 most important when considering custody.  The Court has had to previously incarcerate the Wife for eight (8) days and suspend the remainder of an eighty (80) day sentence for the Wife's interference with phone calls and visits with the Husband and for outrageous statements screamed at the Husband in front of the children: all to their detriment.  The Wife does not have the ability to facilitate and encourage a close and continuing parent-child relationship between the Husband and the children.  The Husband, on the other hand, has worked very hard to foster a good relationship between the Wife and the children.

---

[2](...continued)
designation of a primary residential parent and the determination of residential parenting time are controlled by the fifteen factors and a sixteenth discretionary catch-all provision outlined in Tenn. Code Ann. § 36-6-404(b), not by the ten factors in Tenn. Code Ann. § 36-6-106.  *See Bryant v. Bryant*, No. M2007-02386-COA-R3-CV, 2008 WL 4254364, at *5–6 (Tenn. Ct. App. Sept. 16, 2008).

g.     This Court finds that it is not a close call.  It is in the best interest of the children to designate the Husband as the Primary Residential Parent.  The Wife will have parenting time three (3) days a week only if conflict is not present between the Wife and the Husband and only if the Wife can control her behavior with the Husband.  The Wife shall continue to receive mental health treatment for these issues.  The Husband shall discuss with the Wife all issues concerning the children and shall take into consideration her wishes, however, he shall have the sole decision-making authority in all areas.

h.      Possession of the children at this time shall be four (4) days with the Husband and three (3) days with the Wife.  This custody arrangement is only temporary.  The Court had considered giving the Husband five (5) days per week and the Wife two (2) days per week but the Court wants to see progress made by the Wife.  This is a temporary order on custody because the Court is going to continue to monitor the Wife's progress.  If the custody arrangement does not work, then the Court shall change the arrangement to Husband having the children five (5) days per week and the Wife having only two (2) days per week.  If there is any conflict, or any acting out on the part of the Wife, or if the Wife puts anymore heartbreak on these children, the Court will consider more extreme measures.  The Court will not tolerate any misconduct at all from the Wife.  This Court feels that it has not protected the children from the trauma the Wife has imposed upon them.  The Court will not allow that to happen again.  The Court strongly considered restricting the Wife's time with her children.  The Court expects a concerted effort on the Wife's part to take care of her personality disorders that cause her to act the way she does.

i.      The Wife shall have a child support obligation to the Husband.  It is addressed in the Parenting Plan attached hereto.

j.      The Husband shall insure that the parties' oldest child receives mental health counseling.

k.      The Court wants the parties to make the Wife's treating psychiatrist/ psychologist aware that he/she shall be free to contact the Court if he/she feels that the Wife's behavior is putting the children at risk.  The Court wants

-4-

him/her to notify the Court of such circumstance immediately. Such notification shall be filed with the Court and placed under seal.[3]

Paragraph 21 of the judgment stated, "The Parenting Plan attached hereto is approved for entry and incorporated into this Final Decree of Divorce." The attachment was designated "Permanent Parenting Plan Order" and, among other things, designated Mr. Davidson as the children's primary residential parent; set forth a residential parenting schedule which allotted Mr. Davidson 209 days with the children per year and Ms. Davidson 156 days with each of the children per year; and required Ms. Davidson to pay $348.00 in child support each month. Ms. Davidson initiated an appeal from the Final Judgment of Divorce. The appeal was dismissed without prejudice on December 30, 2008.[4]

Following the entry of the Final Judgment, the trial court entered an order on February 5, 2009, which it denominated "Order Pending Final Hearing," reducing Ms. Davidson's parenting time to two days per week. The order also provided for Ms. Davidson's holiday parenting time, required Ms. Davidson to deliver some items to her psychiatrist, and granted Mr. Davidson a judgment against Ms. Davidson for past due child support in the amount of $214.00. On February 25, 2009, the court entered an agreed order allowing Ms. Davidson to claim her daughter as a dependent on her 2008 income taxes.

On April 17, 2009, Mr. Davidson filed a document styled "Motion for Review." On April 23, 2009, Ms. Davidson filed a "Motion to Increase Parenting Time and to Order Specific Summer Vacation for Mother with Children and to Hear from the Mother's

---

[3] Although not raised as an issue in this appeal, we caution the trial court in including a requirement such as this, which may very well invade the physician/patient privilege, in a parenting plan. In addition to encouraging communications with the court from third parties regarding pending matters, the court has not included a requirement that the parties be notified of any such communication; neither has the court given any indication of what the parties' rights are relative to the communication.

[4] The Order dismissing the appeal stated:

Upon the unopposed motion of the appellant and pursuant to Tenn. R. App. P. 15(a), this appeal is hereby dismissed without prejudice to the filing of a new appeal once a final judgment is entered. The appellant and her surety are taxed with the costs for which execution may issue.

Inasmuch as the motion to dismiss the appeal was unopposed, the order dismissing the appeal was entered based on the representation that a final judgment had not been entered, and this Court was not asked to determine whether the June 2008 judgment was appealable. As more fully explained *infra*, we have determined that the June 2008 order was final.

Therapist." A hearing on the motions was held on June 9, 2009 at which Ms. Davidson's psychologist and her sixteen year old daughter testified.

The trial court entered an order on July 29, 2009 stating in pertinent part, "the Permanent Parenting Plan attached herein shall be incorporated into the June 19, 2008 Final Decree of Divorce and be made a final order. All parenting time is addressed in said Permanent Parenting Plan." The "Permanent Parenting Plan" to which the court referred designated Mr. Davidson as the primary residential parent, gave him 261 days per year with the son and 209 days per year with the daughter; Ms. Davidson was given 104 days and 156 days with her son and daughter, respectively.

On August 21, 2009, Mr. Davidson filed a "Motion to Alter or Amend, set Aside Ms. Davidson's Order and Enter Mr. Davidson's Order/or Relief Under Rule 60 of the Tennessee Rules of Civil Procedure" requesting the court to make certain changes and corrections to the court's July 29, 2009 order and permanent parenting plan. On September 25, 2009, prior to the court's ruling on Mr. Davidson's motion, Ms. Davidson filed her notice of appeal. On November 16, 2009, the trial court entered an order on the motion in which the court adopted another "Permanent Parenting Plan Order" which made some modifications to the "Holiday Schedule And Other School Free Days" section of the plan ordered in July 2009; the November 16 order stated that "the Permanent Plan attached herein shall be incorporated into the June 18, 2008 Final Decree of Divorce and be made a final order."

Ms. Davidson appeals the action of the court in naming Mr. Davidson as the primary residential parent of the minor children and in reducing her parenting time with her son. Both rulings were a part of the July 19, 2009 order and were not disturbed by the modifications in the November 2009 order. In addition, she contends the trial court's bias toward her resulted in a decision unsupported by the evidence.[5] Pursuant to Tennessee Rule of Appellate Procedure 4(e), Ms. Davidson's Notice of Appeal "shall be deemed premature and shall be treated as filed after the entry of the order disposing of the motion and on the day thereof." Tenn. R. App. P. 4(e). Consequently, the orders subject to review in this appeal are the orders entered July 29 and November 16, 2009.

---

[5] Ms. Davidson also appealed the division of marital property. At oral argument she waived the issue and asked this Court to focus solely on the parenting plan matters.

## II. Analysis

### A. Parenting Plan Orders

This appeal is from two orders in which the court stated it was incorporating a permanent parenting plan into the June 19, 2008 Final Judgment of Divorce. This presents a unique procedural posture which requires us to examine the authority under which the trial court made adjustments to the Permanent Parenting Plan entered with its June 19, 2008 Final Judgment of Divorce. Although this issue is not raised by the parties, Tenn. R. App. P. 36(b) allows this Court to "consider an error that has affected the substantial rights of a party at any time, even though the error was not raised in the motion for a new trial or assigned as error on appeal."

The Tennessee legislature has directed courts to adopt permanent parenting plans in all actions for absolute divorce where minor children are involved. *See* Tenn. Code Ann. § 36-6-404(a) (2005) ("Any final decree or decree of modification in an action for absolute divorce, legal separation, annulment, or separate maintenance involving a minor child shall incorporate a permanent parenting plan . . . ."). The parenting plan statutes direct trial courts to: "(1) adopt permanent parenting plans in all divorces involving minor children; (2) not award "custody" or "visitation" in cases where a parenting plan is required; and (3) apply a specific set of factors, included in the parenting plan legislation when approving or designing a permanent parenting plan." *Dillard v. Dillard*, No. M2007-00215-COA-R3-CV, 2008 WL 2229523, at *4 (Tenn. Ct. App. May 29, 2008). Tenn. Code Ann. § 36-6-402(3) defines a permanent parenting plan as "a written plan for the parenting and best interests of the child, including the allocation of parenting responsibilities and the establishment of a Residential Schedule, as well as an award of child support consistent with title 35, chapter 5[.]" As part of the permanent parenting plan, the court must delineate a residential schedule, which designates the primary residential parent and sets forth the number of days the children will reside with each parent; in crafting the residential parenting schedule, the court is to consider the statutory factors enumerated in Tenn. Code Ann. § 36-6-404(b).

In the Final Judgment of Divorce the trial court approved a permanent parenting plan and made it the order of the court; however, the trial court purported to make the plan temporary by stating:

> h.     This custody arrangement is only temporary. The Court had considered giving the Husband five (5) days per week and the Wife two (2) days per week but the Court wants to see progress made by the Wife. This is a temporary order on custody because the Court is going to continue to monitor the Wife's progress. If the custody arrangement does not work, then the Court shall

-7-

change the arrangement to Husband having the children five (5) days per week and the Wife having only two (2) days per week. If there is any conflict, or any acting out on the part of the Wife, or if the Wife puts anymore heartbreak on these children, the Court will consider more extreme measures. The Court will not tolerate any misconduct at all from the Wife. This Court feels that it has not protected the children from the trauma the Wife has imposed upon them. The Court will not allow that to happen again. The Court strongly considered restricting the Wife's time with her children. The Court expects a concerted effort on the Wife's part to take care of her personality disorders that cause her to act the way she does.

Tenn. Code Ann. § 36-6-404(a), entitled "Requirement of and Procedure for Determining Permanent Parenting Plan," however, mandates the court to incorporate a permanent parenting plan with any final decree in an action for absolute divorce. *See* Tenn. Code Ann. § 36-6-404(a) (2005). The authority of a trial court to enter a temporary parenting plan is set forth in Tenn. Code Ann. § 36-6-403 which states, "[e]xcept as may be specifically provided otherwise herein, a temporary parenting plan shall be incorporated *in any temporary order* of the court in actions for absolute divorce, legal separation, annulment, or separate maintenance involving a minor child . . . ." Tenn. Code Ann. § 36-6-403 (2005) (emphasis added). A trial court is to make a final, "permanent" decision on parental responsibility when it enters the final order on divorce; temporary parenting plans are reserved for temporary orders pending the final hearing.[6]

The trial court lacked authority to maintain indefinite control over the parenting plan,[7] and the court's language in paragraph (2)(h), calling the plan temporary,[8] does not undermine the finality of the Permanent Parenting Plan Order which was incorporated into the Final

---

[6] Parental responsibility determinations "should be made promptly" inasmuch as "delaying these decisions only adds to the divorce's traumatic effect on the children and the parents." *King v. King*, 1992 WL 301303, at *2 (Tenn. Ct. App. Oct. 23, 1992) (citations omitted).

[7] In addition to the lack of authority of the court to make the parenting time plan temporary, the language in paragraph (h) of the judgment, quoted above, set no standards by which the parties, the children, or counsel could determine whether, when, under what conditions, and the extent to which the "temporary" provisions would become permanent or be modified; neither did it set forth a procedure to bring a request for such determinations or modification of the order to the court.

[8] We recognize that trial courts have discretion to grant temporary parenting plans in circumstances "where the trial court does not have sufficient information to make a permanent custody decision or where the health, safety or welfare of the child or children are imperiled." *In re E.J.M.*, No. W2003-0603-COA-R3-JV, 2005 WL 562754, at *3–4 (Tenn. Ct. App. March 10, 2005). Here, there is no question that the trial court had sufficient information to make a final decision on the parenting arrangements in June 2008.

Decree of Divorce.[9] Consequently, section (2)(h) of the October 2008 order is of no effect and the parenting plan order entered with and incorporated into the Final Judgment of Divorce was the permanent parenting plan required by Tenn. Code Ann. § 36-6-404(a). We will dispose of the issues accordingly.

Once the trial court enters a permanent parenting plan, the residential placement schedule is *res judicata* as to the facts in existence or reasonably foreseeable when the decision was made. *Keisling v. Keisling*, 196 S.W.3d 703, 719 (Tenn. Ct. App. 2005); *Hoalcraft v. Smithson*, 19 S.W.3d 822, 828 (Tenn. Ct. App. 1999). It cannot be modified unless there has been a material change in circumstances that makes a change in the child's best interest. *Kendrick v. Shoemake*, 90 S.W.3d 566, 570 (Tenn. 2002); *Blair v. Badenhope*, 77 S.W.3d 137, 148 (Tenn. 2002); *see also Hansen v. Hansen*, No. M2008-02378-COA-R3-CV, 2009 WL 3230984, at *3 (Tenn. Ct. App. Oct. 7, 2009) ("Alteration of a parenting plan cannot be accomplished on a whim."). When one party to the divorce endeavors to modify the permanent parenting plan, the "threshold issue" is whether a material change in circumstances affecting the child's best interest has occurred since the adoption of the existing parenting plan. *See* Tenn. Code Ann. § 36-6-101(a)(2)(B); *see also Kendrick*, 90 S.W.3d at 570. Without a showing of a material change in circumstances, the trial court has no authority to modify a permanent parenting plan.

In neither the July nor the November orders did the trial court make findings of fact of a change in circumstances since June 19, 2008; moreover, the court did not explain the basis of its rulings. We cannot determine the basis upon which Ms. Davidson's parenting time with her minor son was decreased from the 156 days granted in the 2008 Permanent Parenting Plan Order to the 104 days granted in the 2009 Permanent Parenting Plan or whether such reduction was in the best interest of the child. As a consequence, this Court cannot properly perform its function to review the trial court's application of the law to the facts and the exercise of its discretion in determining matters under the parenting plan statutes. *See Eldridge v. Eldridge*, 42 S.W.3d 82, 85 (Tenn. 2001) (quoting *Suttles v. Suttles*, 748 S.W.2d 427, 429 (Tenn. 1988)).

As noted previously, this case presents a unique procedural posture. The court and parties to this case operated under the belief that the June 19, 2008 Permanent Parenting Plan Order was temporary. In the interim, the court made several rulings which modified the parenting schedule and to which the parties have adhered. Under the law applicable to this

___

[9] While the facts are not directly analogous, this court has previously opined that a trial court's intention to review a custody arrangement at a later date did not undermine the finality of the decree. *See Hoalcraft v. Smithson*, 19 S.W.3d at 827–28 (finding that placing a child custody order on the "review docket" does not prevent the order from being final).

case, the parties are entitled to a hearing to determine whether there has been a change in circumstances necessitating or authorizing modifications of the plan.[10]

Because the court had no authority to enter the July and November 2009 orders modifying the permanent parenting plan, we must vacate those orders. We remand the case to allow either or both of the parties to move for modification of the June 19, 2008 parenting plan order in accordance with Tenn. Code Ann. §§ 36-6-405 and 36-6-101 in light of circumstances occurring since that time. One of the issues for consideration by the parties and the court should be the designation of the primary residential parent for each of the children.

### B. The Manner and Conduct of the Hearing

Ms. Davidson complains that the trial court manifested a "prejudicial attitude" toward her, as evidenced by certain comments and procedural rulings. Ms. Davidson, however, did not move the court to recuse itself; consequently, there is no order or record developed on such a motion for us to review.

Comments of the nature complained of can be perceived to affect the outcome of the case. Because we have vacated the orders from which she appeals, and in light of the fact that no motion to recuse was made, it is not necessary for us to determine whether the comments affected the outcome. On remand, we expect the court will conduct further proceedings and resolve the remaining issues in adherence to the authority entrusted the court under the law. The parties are entitled to a hearing and the development of a factual record in accordance with the rules of evidence and procedure, the substantive law applicable to their case, and without the fear and intimidation that inappropriate comments by the court inevitably produce. Each proceeding should be conducted in a manner that instills confidence that the case has been determined in a fair and impartial manner.

## II. Conclusion

For the aforementioned reasons, we VACATE the court's July 29, 2009 Order and Parenting Plan as well as the November 16, 2009 Order and Parenting Plan and REMAND the case to allow the parties to file the appropriate motion for modification of the June 19,

---

[10] For example, at the June 9, 2009 hearing, Ms. Davidson's psychologist, Dr. Mary Black, testified that Ms. Davidson was "mentally stable" and that she is "an exceptionally good parent." Ms. Davidson's daughter also testified that she would prefer to live with her mother. These are matters which may support the finding of a material change of circumstances and lead to modifications of a residential parenting schedule. *See* Tenn. Code Ann. § 36-6-101(a)(2)(B) and (C).

2008 Order and Permanent Parenting Plan Order.  Pending the filing of such motion and hearing thereon, the parties are directed to adhere to the residential parenting schedule contained in the November 2009 order.

_____
RICHARD H. DINKINS, JUDGE