IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
August 23, 2002 Session

## AARON DEL SHANNON v. DARLA JEAN SHANNON

**Appeal from the Chancery Court for Morgan County**
**No. 96-28     Michael A. Davis, Judge**

**FILED OCTOBER 29, 2002**

**No. E2002-00518-COA-R3-CV**

---

In this post-divorce case, Aaron Del Shannon ("Father") filed a petition against his former wife, Darla Jean Shannon ("Mother"), seeking to modify the parties' divorce judgment, which judgment, *inter alia*, had awarded Mother custody of the parties' two minor children. In his petition, Father sought a change of custody and asked to be named primary residential parent of the children. The trial court found a substantial and material change of circumstances and granted Father's petition. We reverse.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court**
**Reversed; Case Remanded**

CHARLES D. SUSANO, JR., J., delivered the opinion of the court, in which HERSCHEL P. FRANKS and D. MICHAEL SWINEY, JJ., joined.

Rebecca A. Bell, Knoxville, Tennessee, for the appellant, Darla Jean Shannon.

D. Vance Martin, Knoxville, Tennessee, for the appellee, Aaron Del Shannon.

**OPINION**

I.

The parties were divorced by judgment entered February 24, 1997. Mother was designated as the primary residential parent of Dallas Rhiann Shannon (DOB: May 8, 1993) and Luke Finley Shannon (DOB: March 6, 1995), and Father was granted reasonable visitation rights. Both parties have now remarried. Father and his new wife have one child.

Prior to the matter now on appeal, the parties had been before the trial court on two occasions since the entry of the divorce decree – on October 8, 1998, and May 8, 2000. In both cases, the issues addressed by the court related to co-parenting matters.

In the summer of 2001, Mother, the children, and Mother's new husband, Daniel Knighten ("Stepfather"), were living in the Union County home of Stepfather's parents. In early August, 2001, they moved to a rental house in the Mechanicsville area of Knoxville. Once Mother advised Father of the location of the house to which she planned to move, Father drove to the neighborhood to investigate the location. He photographed the rental house and surrounding houses, as well as Maynard Elementary School, the school for which the children would be zoned. The children had previously been zoned for and attended Pleasant Ridge Elementary School.

After looking at the neighborhood, Father was not pleased. On August 7, 2001, he filed a petition to modify the custody arrangement,[1] contending that Mother's "lifestyle and uncooperative attitude and poor decisions constitutes [*sic*] a material and substantial change of circumstances" warranting a modification of the custody arrangement. Father asked for temporary custody of the children and requested that he be designated as the primary residential parent. On the same date, at an *ex parte* hearing, the trial court granted Father temporary custody of the children and adopted his temporary parenting plan.

A final hearing was held on February 6, 2002. At the conclusion of the hearing, the trial court made the following findings:

> [T]he Court finds that there has been a material and substantial change of circumstances for these children since the last custody order that was put in place.
>
> The Court finds these two loving parents but yet again, the Court is placed in a position of deciding where these children should be placed. The material change in circumstances the Court finds is based upon simply – and I believe [Mother] has placed herself in an instable [*sic*] situation by not moving, per se, but moving with the frequency she's moved, moving into a downward decline in an area, not moving to improve her environment or moving to improve her children's environment but moving and consequentially placing these children in a difficult, not a better, not a better environment for them.

One month later, the court entered an order, incorporating the aforesaid remarks. The order also adopted Father's proposed permanent parenting plan. In addition, the court ordered Mother to pay child support and awarded Father a judgment against Mother for past-due support. From this judgment, Mother appeals.

---

[1]Mother was not immediately served with process because she was out of the country in connection with her service in the National Guard.

II.

In this non-jury case, our review of the trial court's factual findings is *de novo* on the record from the proceedings below; however, the case comes to us accompanied by a presumption that those findings are correct – a presumption we must honor unless the evidence preponderates against the trial court's factual findings. Tenn. R. App. P. 13(d); *Musselman v. Acuff*, 826 S.W.2d 920, 922 (Tenn. Ct. App. 1991).

III.

An initial award of custody is "subject to such changes or modification as the exigencies of the case may require." Tenn. Code Ann. § 36-6-101(a)(1) (2001). This court has noted that the initial judgment awarding custody "is *res judicata* and is conclusive in a subsequent application to change custody unless some new fact has occurred which has altered the circumstances in a material way so that the welfare of the child requires a change of custody." *Griffin v. Stone*, 834 S.W.2d 300, 301-02 (Tenn. Ct. App. 1992). Thus, the crucial question is whether there has been a "material change" warranting a change of custody. *Hoalcraft v. Smithson*, 19 S.W.3d 822, 828 (Tenn. Ct. App. 1999). To constitute a material and substantial change of circumstances warranting modification of a custody decree, a change "must occur after the entry of the order sought to be modified and the change cannot be one that was known or reasonably anticipated when the order was entered." *Id.* at 829.

A trial court has broad discretion in determining matters of custody, *Parker v. Parker*, 986 S.W.2d 557, 563 (Tenn. 1999), and "we will not tamper with that discretion unless the facts demonstrate that the trier of fact has abused his or her discretion." *Brumit v. Brumit*, 948 S.W.2d 739, 740 (Tenn. Ct. App. 1997). Such determinations are factually driven and involve consideration of several factors. *Adelsperger v. Adelsperger*, 970 S.W.2d 482, 485 (Tenn. Ct. App. 1997). The best interest of the child is the paramount consideration. *Suttles v. Suttles*, 748 S.W.2d 427, 429 (Tenn. 1988). A custody decision must not be motivated by a desire to reward or punish a parent. *Adelsperger*, 970 S.W.2d at 485. The burden to prove a material and substantial change of circumstances rests upon the party seeking a modification of the prior order. *Hoalcraft*, 19 S.W.3d at 830.

Mother argues that the trial court erred in finding that a material and substantial change of circumstances existed, justifying a modification of the custody arrangement. We agree.

Essentially, the trial court based its finding of the requisite change of circumstances on the number of moves that Mother had made with the children, as well as the "downward decline" in the areas to which she moved. We will begin by addressing the frequency of Mother's moves.

In Father's initial petition for modification, he listed eight different locations where Mother and the children had lived since the spring of 1996. At trial, Father again testified to a number of moves that Mother had made within the past six years. However, for the purpose of determining whether a material and substantial change of circumstances exists, courts are constrained to consider

only those changes which have occurred since the last hearing. *See* **Hoalcraft**, 19 S.W.3d at 829. The parties were last before the court on May 8, 2000. Therefore, the material moves are those that have occurred since May 8, 2000.

In May, 2000, Mother, Stepfather and the children were living in an apartment on Pleasant Ridge Road in Knoxville. That fall, they moved to an apartment on Western Avenue in Knoxville. In early May, 2001, the family moved to a house in Halls, a suburb of Knoxville, where they had planned to spend the summer house-sitting for one of Mother's friends. However, as a result of a disagreement Mother had with the friend one week after moving in, the family moved into the home of Stepfather's parents in Union County for the summer.

Mother testified that, throughout the summer, she and Stepfather were looking at residences in Knoxville, with an eye toward purchasing a house. They eventually found one on Springdale Avenue. However, the owners of the Springdale house were in the process of building a house and, consequently, Mother and Stepfather could not move into the Springdale house in time for the children to start school in the fall. In order to keep the children in the Knox County school system, they decided to rent a house in Knoxville temporarily. Mother explained at trial that they did not want to rent an apartment since that would involve signing a lease, and they did not want to be forced to break their lease when the Springdale house was ready. Consequently, they found a rental house for the family on Tulip Road, which is in the Mechanicsville area of Knoxville. Mother, Stepfather and the children moved into the Tulip Road house in early August. Mother testified that she did not expect to be in the Tulip Road house for more than a few weeks, at which time she and her family planned to move into the Springdale house.

We do not believe these four moves constitute a material and substantial change of circumstances. Indeed, the move to Union County would not have been necessary had it not been for Mother's disagreement with her friend; and if the house on Springdale had been ready for the family by the end of the summer, there would have been no reason for the family to move to the house on Tulip Road. It appears that Mother was doing everything she could to get her family into a stable and permanent home, and that she was doing so in the most cost-efficient manner.

We are a transient society. The reality of life is that the circumstances of families change, for various and sundry reasons, and these changes sometimes necessitate that families move to new homes, new neighborhoods, and new cities. While Mother did move frequently in 2000 and 2001, she had reasonable explanations for each of the moves and, based upon her testimony, the ultimate goal was to purchase a home. The moves were simply a means of accomplishing that end. At the time of trial, Mother and Stepfather were living in the Springdale house. While they had not yet been able to purchase it, they were making improvements to the house because they still planned to buy it.

Turning to the issue of the locations to which Mother has moved, the majority of the trial testimony centered on Mother's move to the Tulip Road rental house. Father testified that the house is located in a high-crime area where there is "high drug traffic." However, the record is devoid of

any credible evidence of crime statistics in the area surrounding Tulip Road. In fact, the trial court recognized this lack of evidence and stated "there's no proof that it's a high crime area ...." In spite of that statement, the trial court, in issuing its ruling from the bench, referred to Mother moving "into a home in that particular type of area which the Court's aware of ...." While we are not sure of what the court was "aware of," the nature of a neighborhood is not typically something about which a court can take judicial notice. *See* Tenn. R. Evid. 201(b). Certainly, there is nothing in this case to indicate that the neighborhood in question is generally known in the community as an undesirable, high-crime area.

Based upon the photographs of the rental house and surrounding houses introduced at trial, it certainly does not appear that the Tulip Road property is located in one of Knoxville's best neighborhoods. However, the house was never intended to be anything other than a temporary residence, and we certainly cannot fault Mother for moving into a lower-income neighborhood. Further, there was absolutely no credible proof offered at trial that the number of moves or the locations to which the family moved in any way adversely affected the children. There was no evidence introduced at trial that Mother had failed to provide the children with food, clothing, medical care, and education. There was no evidence at trial that Mother or Stepfather had abused the children. Based upon the report cards of the children that were introduced at trial, both children have made consistently excellent grades, and the parties' daughter is in the talented and gifted program at school. Dr. Michelle Jester, the marital and family therapist who interviewed the children in anticipation of trial, testified that the children were "doing very well and have been for a long time." Dr. Jester further testified as follows:

> Well, these children are remarkable. They really have a lot of strengths. When I talked to them they're happy. Their interaction with their mother, they're very comfortable. They were friendly. They weren't scared to meet me, you know, they just waltzed right in and wanted to play and talk about their lives. And they're just very happy well adjusted children. I would expect to see more hesitancy and more insecurity if they have been negatively affected by a move or it they felt their living situation was unstable. But they don't seem that way to me.

When asked if this sort of behavior could have been developed since custody was changed to Father, Dr. Jester responded that, "[m]y feeling is it's lifelong. You don't get that kind of healthy, emotional development in a child in a few months."

There has been no showing that these moves and changes in locations have caused harm of any kind to the children in the instant case. Accordingly, we find that the evidence preponderates against the trial court's finding that Mother's moves constitute a material and substantial change of circumstances. We therefore find that the trial court abused its discretion when it changed custody in this case.

IV.

Mother seeks her attorney's fees incurred on this appeal. The award of attorney's fees in a post-divorce proceeding such as the one now before us is governed by Tenn. Code Ann. § 36-5-103, which states, in pertinent part, as follows:

> The plaintiff spouse may recover from the defendant spouse, and the spouse or other person to whom the custody of the child, or children, is awarded may recover from the other spouse reasonable attorney fees incurred in enforcing any decree for alimony and/or child support, *or in regard to any suit or action concerning* the adjudication of the custody or *the change of custody of any child, or children, of the parties, both upon the original divorce hearing and at any subsequent hearing*, which fees may be fixed and allowed by the court, before whom such action or proceeding is pending, in the discretion of such court.

Tenn. Code Ann. § 36-5-103(c) (2001) (emphasis added). We find that an award to Mother of attorney's fees incurred in this appeal is appropriate, and we therefore remand this case to the trial court for a determination of a reasonable fee. *See D v. K*, 917 S.W.2d 682, 686-87 (Tenn. Ct. App. 1995).

V.

The judgment of the trial court is reversed. The previous order of the trial court awarding custody to Mother subject to Father's visitation rights as specified in that order is hereby reinstated. Father will deliver the children to Mother no later than five o'clock p.m. on October 30, 2002. Costs on appeal are taxed to the appellee, Aaron Del Shannon.

_____
CHARLES D. SUSANO, JR., JUDGE