IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
July 8, 2002 Session

## RENEE SHELBY GRIFFITH v. JAMES ALDEN GRIFFITH

**Appeal from the Chancery Court for Montgomery County**
**No. 94-76-499      Michael R. Jones, Judge, by Interchange**

**No. M2001-02369-COA-R3-CV - Filed September 12, 2002**

Renee Shelby Griffith ("Mother") and James Alden Griffith ("Father") were divorced in 1995. Mother originally was awarded primary physical custody of the parties' two minor children. Father later sought a change of custody. The Trial Court granted Father's motion to modify custody, finding that a material change in circumstances had occurred and that a change of custody would serve the best interests of the children. Mother appeals. We affirm, in part, and vacate, in part, and remand.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed, in part, and Vacated, in part; Case Remanded.**

D. MICHAEL SWINEY, J., delivered the opinion of the court, in which HOUSTON M. GODDARD, P.J., and HERSCHEL P. FRANKS, J., joined.

Roger A. Maness, Clarksville, Tennessee, for the Appellant, Renee Shelby Griffith.

Rodger N. Bowman, Clarksville, Tennessee, for the Appellee, James Alden Griffith.

# OPINION

## Background

The parties were divorced in June 1995. The Final Decree of Divorce ("Divorce Decree") granted the parties joint custody of their two minor children ("Children"), who, at the time of this opinion, are approximately ages 13 and 11.[1] The Divorce Decree awarded Mother primary physical custody and granted Father visitation. The record on appeal shows that what followed the entry of the Divorce Decree was a contentious battle between the parties over custody of the Children.

Father filed a Motion to Amend Final Decree as to Custody in September 1996. This motion was based, in part, on Father's allegations that Mother, a registered nurse, was addicted to prescription drugs and that Mother had tested positive for drugs in a test performed by her employer, a hospital. Mother admitted, in her response to the motion, that she had failed a random drug test in January 1996. After a hearing on this motion, the Trial Court entered an Order in May 1997, denying Father's request to modify custody but granting Father an increase in visitation.

In May 1998, Father again filed a motion for change of custody ("Motion to Modify Custody") asking the Trial Court to make him the primary physical custodian of the Children and requesting an immediate *ex parte* order for temporary custody. In the motion, Father alleged that Mother again was abusing prescription drugs and had been discharged from her job as a nurse. Father also alleged the Children's physical safety could be in danger due to Mother's drug abuse.

For reasons unclear from the record, the Motion to Modify Custody was not heard by the Trial Court for over a year. In June 1999, Father filed a Motion for Immediate Hearing alleging the Children were in imminent danger while in Mother's custody because Mother had recently attempted suicide while the Children were at home and because Mother had been discharged from employment twice in the past year due to her drug abuse problem. Father, in November 1999, filed another Motion for Immediate Hearing alleging that Mother had driven while under the influence with the Children in the car. The Trial Court held a hearing and entered an Order in December 1999, granting Father temporary physical custody of the Children based upon these allegations.

The Trial Court held two hearings in January and March 2001 on Father's Motion to Modify Custody. The Trial Court only considered proof regarding events that had occurred *after* the May 1997 Order. Mother testified she had a substance abuse problem which began approximately in January 1996. Mother testified she became addicted to prescription drugs when her physician prescribed her Mepergan after she underwent surgery related to Chron's Disease. Mother claimed the last time she took a drug that was not prescribed to her was October 1996. The proof also shows

---

[1] The record shows the parties agreed to the issue of the custody of the Children in a Marital Dissolution Agreement which was incorporated by reference thereto in the Divorce Decree.

Mother, a registered nurse, lost several hospital jobs due to her drug problem. At the time of the hearings in 2001, Mother had graduated from paralegal school and was employed by Cigna Insurance Company as a medical investigator.

The proof shows Mother, over the Memorial Day weekend in 1999, stuck her wrist with a knife and needle and drew blood. Mother cut her wrist at home while the Children were asleep. Thereafter, Mother was hospitalized for a few days. Mother denied this was a suicide attempt and characterized it as a way to get attention. Mother testified she did this to herself because she and her boyfriend had discussed breaking up. Mother, since approximately 1993, has been under the care of a psychiatrist who prescribed her an anti-depressant, Prozac.

On Halloween 1999, Mother drove the Children and some of their friends from her boyfriend's home to her home after the Children had trick-or-treated that evening. One of the Children's friends testified Mother had fallen asleep at her boyfriend's house and that it was difficult to wake Mother so they could leave. While backing her vehicle out of her boyfriend's driveway, Mother hit a mailbox. Mother testified this was an accident and that this was the only out-of-the-ordinary event that occurred while she drove the Children and their friends home. The Children and another minor, who was riding in the car with Mother, however, testified Mother's driving frightened them because not only had she hit a mailbox, but she also drove sporadically, nearly hit another vehicle, and, once Mother reached her neighborhood, allowed the older Child, then age 11, to drive her vehicle. The proof also shows Mother appeared hung-over and had slurred speech the following morning.

Mother denied drinking more than approximately 2 beers that evening and testified that she simply was tired at the end of a long day. Mother's boyfriend testified he did not recall seeing Mother drinking alcohol that evening while the Children were trick-or-treating.

The proof in the record on appeal shows that, at the time of the January and March 2001 hearings, Father lived with his girlfriend, Tammy Joiner, in a house located next-door to Father's parents. The record shows Father and Joiner have a child who was then approximately 2 years old. The proof shows Father, Joiner, and the paternal grandparents participated in caring for the Children. Father testified the Children are aware that he and Joiner are not married.

Thereafter, the Trial Court entered an opinion ("First Order") on Father's then pending Motion to Modify Custody. The Trial Court granted Father's motion, stating, in the First Order, as follows:

> The Court therefore finds that the "stupid" event of Memorial Day and the drinking and driving on Halloween clearly demonstrate that there has been a change of circumstances. Further these events clearly establish that the physical safety of the children was jeopardized by the mother. Therefore it is clearly in the best interest of the children that the primary residential parent be the father.

The testimony of [one of the Children] demonstrated that the paternal grandparents likewise contribute to the every day well being of the children. "Poppa takes me to the bus." The paternal grandparents live next door to the father. The children are doing well in public school, [sic] active in school activities and extracurricular activities.

The Trial Court also found in the First Order that, while it could not condone Father's cohabitation with his girlfriend "as morally beneficial," it found the "[C]hildren regard Tammy Joiner as their stepmom and she certainly performs the functions of a parent."

After the hearings held in January and March, 2001, but before the First Order was entered, Mother filed a motion asking the Trial Court to reopen proof. In this motion, Mother alleged that since the March 2001 hearing, Father and his girlfriend, Joiner, had stopped dating and Father and the Children were no longer living in their home. The motion alleged Father had been convicted of domestic assault of Joiner.

The Trial Court granted Mother's motion to reopen proof and held a hearing in August 2001. At this hearing, Joiner testified that on March 9, 2001, a few days after the last hearing, Father asked her to move out of their home and leave their 2-year-old child in his care. Joiner refused. Thereafter, Joiner and Father had an argument during which Joiner alleged Father hurt her when he grabbed her arm while she was holding their child. The record shows the Children were not present when this occurred. Subsequently, Father was arrested for assault, and as part of his conditional release upon making bond, Father was not allowed to be near Joiner or enter his and Joiner's home.[2] Joiner also testified that prior to the March 2001 assault, Father frequently drank alcohol and that while drinking, Father had violent episodes with her. The proof also shows that on the date of his assault arrest, Father removed the vehicle Joiner had been using, thereby leaving her without any transportation. At the time of the August 2001 hearing, Father and Joiner were living separately, and their child had been committed to the custody of the Juvenile Court.[3]

Thereafter, the Trial Court entered an Order ("Second Order") in which it held Mother had "not presented sufficient proof which would cause the Court to change, alter or amend its [First Order]." The Second Order incorporated the First Order by reference thereto. The Second Order did not address specifically the issue of Father's alleged assault of Joiner.

Mother appeals.

---

[2] The record on appeal does not contain any proof regarding whether Father was convicted of domestic assault of Tammy Joiner.

[3] The record on appeal does not disclose why the Juvenile Court was exercising jurisdiction over Father's and Joiner's minor child.

## Discussion

On appeal and although not exactly stated as such, Mother raises the following issue: whether the Trial Court erred in granting Father's Motion to Modify Custody. Father raises no additional issues on appeal but contends that, pursuant to Tenn. Code Ann. § 36-5-103(c), he is entitled to recover his attorney's fees incurred on appeal.

Our review is *de novo* upon the record, accompanied by a presumption of correctness of the findings of fact of the Trial Court, unless the preponderance of the evidence is otherwise. Tenn. Rule App. P. 13(d); *Bogan v. Bogan*, 60 S.W.3d 721, 727 (Tenn. 2001). A Trial Court's conclusions of law are subject to a *de novo* review with no presumption of correctness. *Southern Constructors, Inc. v. Loudon County Bd. of Educ.*, 58 S.W.3d 706, 710 (Tenn. 2001).

The Trial Court's prior custody determination is *res judicata* and is, therefore, conclusive unless it is shown that "some new fact has occurred which has altered the circumstances in a material way so that the welfare of the child requires a change of custody." *Hoalcraft v. Smithson*, 19 S.W.3d 822, 828 (Tenn. Ct. App. 1999). Tenn. Code Ann. § 36-6-101(a)(1) provides that custody determinations are subject to modification "as the exigencies of the case may require." Courts afford a strong presumption in favor of the existing custody arrangement. *Hoalcraft v. Smithson*, 19 S.W.3d at 829.

On appeal, Mother contends the Trial Court should have engaged in a comparative fitness analysis between the parties in determining Father's Motion to Modify Custody. The comparative fitness test, by itself, does not control *modifications* of existing custody orders. *See id.* at 828-30. Instead, the person seeking a change of custody has the burden of establishing: (1) a material change of circumstances has occurred which was not reasonably foreseeable at the time of the original custody determination; and (2) the child's best interests will be served by the change of custody. *Id.* at 828. This Court further defined "material change of circumstances" as those circumstances of the child which affect the well-being of the child, as opposed to circumstances affecting the parents. *Id.* at 829. If the trial court finds that the moving party has not established a material change of circumstances, then the trial court need not make the second inquiry involving whether the change of custody would serve the child's best interests. *Caudill v. Foley*, 21 S.W.3d 203, 213 (Tenn. Ct. App. 1999).

The Trial Court, in the First Order, held that Father had carried his burden of proving a material change in circumstances such that a change in custody was warranted. The Trial Court specifically found that Mother's apparent suicide attempt over Memorial Day weekend in 1999 and her reckless driving while under the influence of an intoxicant over Halloween in 1999 constituted a material change of circumstances. The record shows Mother attempted to gloss-over her suicide attempt and flatly denied the drunk driving incident. It is clear from the First Order that the Trial Court, in making this determination, did not find Mother to be a credible witness, holding, in pertinent part, as follows:

[M]other testified that her drug abuse problem began in January 1996 when her doctor prescribed meprogan thereby blaming her doctor for her addiction. The mother further testified that she was asked to resign a position due to missing narcotics. She blamed her "hot test" on a mix up of samples. She either quit or was terminated from another position due to giving a medication to a patient based on an oral instruction of a doctor; she blamed this discharge on a failure to place these instructions for Adavan and Demerol on the patient's chart. . . . The mother also blamed the husband for the children's testimony in reference to the Halloween episode. When confronted with absolute proof of her drinking and driving, the mother testified that it did not occur. The mother failed and fails to accept responsibility for her own acts. These acts have endangered the lives of the children and others.

The mother was not a teenager deeply in love with her first love when she committed her "stupid" act of cutting herself. She was 33 years of age, a registered nurse and the mother and caretaker of two small children. . . . As a result the mother was committed and removed from the home to remain in a hospital for approximately 4 days. The Court cannot find that the mother considered the welfare of her children at all when she acted out to get the attention of her boy friend. . . .

With respect to the Halloween episode, the First Order also characterized Mother's denial of the Children's account of what occurred as having "no credibility."

The Trial Court's finding that a material change in circumstances exists such as to warrant a change in custody was based upon its observation of the parties at the hearings, and its comparison of the demeanor of all the witnesses, including Father and Mother. Trial courts, when determining custody matters, take into account a number of factors, "'including the parents' demeanor and credibility during the . . . proceedings.'" *Nelson v. Nelson*, 66 S.W.3d 896, 901 (Tenn. Ct. App. 2001) (quoting *Gaskill v. Gaskill*, 936 S.W.2d 626, 631 (Tenn. Ct. App. 1996)). "Unlike this Court, the trial court observed the manner and demeanor of the witnesses and was in the best position to evaluate their credibility." *Union Planters Nat'l Bank v. Island Mgmt. Auth., Inc.*, 43 S.W.3d 498, 502 (Tenn. Ct. App. 2000). The trial court's determinations regarding credibility are accorded deference by this Court. *Id.*; *Davis v. Liberty Mutual Ins. Co.*, 38 S.W.3d 560, 563 (Tenn. 2001). "[A]ppellate courts will not re-evaluate a trial judge's assessment of witness credibility absent clear and convincing evidence to the contrary." *Wells v. Tennessee Bd. of Regents*, 9 S.W.3d 779, 783 (Tenn. 1999). Based upon the record before us and the deference we afford the Trial Court's assessment of the parties' demeanor and credibility, we hold the evidence does not preponderate against the Trial Court's factual finding that Mother's conduct, on at least two occasions, showed a disregard for the welfare of the Children. Accordingly, we hold that the Trial

Court did not err in holding that Father carried his burden of establishing that a material change in circumstances had occurred.

Next, we address whether the Trial Court correctly found that a change in custody would serve the best interests of the Children. *See Hoalcraft v. Smithson*, 19 S.W.3d at 828. In making child custody determinations, trial courts "'should promote children's best interests by placing them in an environment that will best serve their physical and emotional needs.'" *Nelson v. Nelson*, 66 S.W.3d at 901 (quoting *Gaskill v. Gaskill*, 936 S.W.2d at 630). Tenn. Code Ann. § 36-6-106(a)(1)-(10) sets forth the factors a trial court is to use when determining child custody. Relevant to this issue is Tenn. Code Ann. § 36-6-108(a)(8) which provides:

> (a) In a suit for annulment, divorce, separate maintenance, or in any other proceeding requiring the court to make a custody determination regarding a minor child, such determination shall be made upon the basis of the best interest of the child. The court shall consider all relevant factors including the following where applicable:
>
> (8) Evidence of physical or emotional abuse to the child, to the other parent *or to any other person. . . . The court shall include in its decision a written finding of all evidence, and all findings of fact connected thereto.*

(emphasis added).

The Trial Court, despite hearing evidence of Father's arrest and charge for domestic assault of Tammy Joiner, his then live-in girlfriend and mother of his youngest child, failed to address these allegations in its Second Order. Tenn. Code Ann. § 36–6-106(a)(8) is mandatory and provides that the Trial Court "shall" make a written finding of evidence and findings of fact concerning the allegations and proof of abuse presented to the Trial Court. *See Nelson v. Nelson*, 66 S.W.3d at 902 (remanding to the trial court for a determination of the minor children's best interests, pursuant to Tenn. Code Ann. § 36-6-106(a)(8), due to allegations that father physically abused mother).

Father's abuse of his then-girlfriend, Tammy Joiner, if any, weighs heavily in this custody determination as such abuse is relevant to the best interests of the Children, especially in light of the proof that Joiner lived with Father and the Children for a substantial period of time and Joiner participated in caring for the Children, who regarded her as their step-mother. The implications of such abuse, if true, are far-reaching with respect to the relationship Father has with the mother of the Children's half-sibling and the relationship Father has and will have with the Children. Accordingly, we vacate the portion of the Trial Court's judgment that a change of custody would serve the Children's best interests and remand this matter to the Trial Court to make a written finding regarding the allegations of abuse by Father of Joiner as required by Tenn. Code Ann. § 36-6-106(a)(8). The Trial Court, after complying with Tenn. Code Ann. § 36-6-106(a)(8), then shall make

a determination, after considering all relevant factors, as to whether a change of custody will serve the children's best interest.

The remaining issue on appeal is Father's request for an award of his attorney's fees incurred on appeal pursuant to Tenn. Code Ann. § 36-5-103(c). In the exercise of our discretion and in light of our decision to vacate a portion of the Trial Court's judgment, we decline to award Father's attorney's fees. *See Smith v. Smith*, 984 S.W.2d 606, 610 (Tenn. Ct. App. 1997) (holding that an award of attorney's fees incurred on appeal would not be appropriate where both parties were partially successful on appeal).

## Conclusion

The Trial Court's judgment that a material change in circumstances has occurred is affirmed, but the portion of the judgment regarding whether a change in custody would serve the best interests of the Children is vacated. This cause is remanded to the Trial Court for further proceedings as required, consistent with this Opinion, and for collection of the costs below. The costs on appeal are equally assessed against the Appellant, Renee Shelby Griffith, and her surety, and the Appellee, James Alden Griffith.

_____
D. MICHAEL SWINEY, JUDGE