IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs June 26, 2003

## ELIZABETH D. OLIVER v. MARC L. OLIVER

**Appeal from the Circuit Court for Davidson County**
**No. 99D-757      Muriel Robinson, Judge**

---

**No. M2002-02880-COA-R3-CV - Filed April 26, 2004**

---

This appeal involves a father's effort to obtain primary physical custody of his now twelve-year-old daughter. Approximately three months after the parties' divorce, the father filed a petition in the Circuit Court for Davidson County seeking to hold the mother in criminal contempt for interfering with his visitation and for alienating their daughter. He later amended his petition to seek primary physical custody. Following a bench trial, the trial court held the mother in contempt but declined to change custody from the mother to the father. The father has appealed. We have determined that the trial court did not err by denying the father's petition to change custody.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

WILLIAM C. KOCH, JR., J., delivered the opinion of the court, in which WILLIAM B. CAIN and PATRICIA J. COTTRELL, JJ., joined.

Rosemary E. Phillips, Goodlettsville, Tennessee, for the appellant, Marc L. Oliver.

Elizabeth D. Oliver, Nashville, Tennessee, Pro Se.

**OPINION**

**I.**

Marc L. Oliver and Elizabeth D. Oliver were divorced on May 22, 2000. The final divorce decree entered by the Circuit Court for Davidson County approved and incorporated a marital dissolution agreement providing that they would have joint legal custody of their then nine-year-old daughter but that Ms. Oliver would be the primary physical custodian. The marital dissolution agreement defined Dr. Oliver's visitation rights, and the final divorce decree contained standard prohibitions against impeding visitation or alienating the child.

Immediately after the divorce, Ms. Oliver began interfering with Dr. Oliver's visitation and making derogatory remarks about him to their child. Specifically, Ms. Oliver (1) denied Dr. Oliver his Wednesday night visitations for five weeks, (2) delivered the child late and picked her up early

during visitation times, (3) refused to provide Dr. Oliver with information regarding when to pick up the child for his July 1 through 9, 2000 visitation, (4) refused to allow phone access to the child, (5) repeatedly made derogatory comments about Dr. Oliver in the child's presence, and (6) failed to offer Dr. Oliver the opportunity to babysit the child.[1]

On August 29, 2000, Dr. Oliver filed a petition in the trial court seeking to hold Ms. Oliver in contempt and to modify the visitation arrangements in the marital dissolution agreement. Ms. Oliver responded to this petition by swearing out a warrant for harassment against Dr. Oliver and by seeking an order of protection.[2] She also arbitrarily removed the child from her elementary school and placed her in another school to make it more difficult for Dr. Oliver to have lunch with the child. Accordingly, on January 9, 2001, Dr. Oliver amended his petition to seek primary physical custody of the parties' daughter.

The trial court conducted a bench trial on February 26, 2002. The court found Ms. Oliver had set upon a course of behavior that had successfully alienated the child from Dr. Oliver. After concluding that Ms. Oliver was guilty of thirteen willful violations of the marital dissolution agreement and final divorce decree, the trial court sentenced her to a suspended 130-day jail sentence. However, the trial court declined to award Dr. Oliver primary physical custody of the parties' daughter. Dr. Oliver appeals the latter decision.

## II.

Custody and visitation decisions are among the most important decisions that courts make. *Steen v. Steen*, 61 S.W.3d 324, 327 (Tenn. Ct. App. 2001); *Adelsperger v. Adelsperger*, 970 S.W.2d 482, 484 (Tenn. Ct. App. 1997). Their chief purpose is to promote the child's welfare by creating an environment that promotes a nurturing relationship with both parents. *Aaby v. Strange*, 924 S.W.2d 623, 629 (Tenn. 1996).

Each parent has his or her own strengths and weaknesses, *Gaskill v. Gaskill*, 936 S.W.2d 626, 630 (Tenn. Ct. App. 1996), and it would be unrealistic to measure each parent against the standard of perfection. *Earls v. Earls*, 42 S.W.3d 877, 885 (Tenn. Ct. App. 2000); *Bush v. Bush*, 684 S.W.2d 89, 93 (Tenn. Ct. App. 1984). Therefore, custody decisions are not intended to reward parents for prior virtuous conduct or to punish them for their human frailties or past missteps. *Earls v. Earls*, 42 S.W.3d at 885; *Gaskill v. Gaskill*, 936 S.W.2d at 630. Rather, taking the parents as they presently are, the courts must pragmatically decide whether the parents, even though divorced, will be able to share the responsibilities for raising their child or, if not, which of the two parents is comparatively more fit to take on the primary parenting role.

---

[1] The marital dissolution agreement provided that Dr. Oliver was to be given the first opportunity to babysit the parties' daughter during times when the mother required a babysitter and that Ms. Oliver could use another babysitter only if Dr. Oliver was not available.

[2] Both of these proceedings were later dismissed.

Children thrive in stable environments. *Aaby v. Strange*, 924 S.W.2d at 627; National Interdisciplinary Colloquium on Child Custody, *Legal and Mental Health Perspectives on Child Custody Law: A Deskbook for Judges* § 5:1, at 51 (1998) ("*Legal and Mental Health Perspectives on Child Custody Law*"). Accordingly, the courts favor existing custody arrangements. *Taylor v. Taylor*, 849 S.W.2d 319, 332 (Tenn. 1993); *Hoalcraft v. Smithson*, 19 S.W.3d 822, 828 (Tenn. Ct. App. 1999). In fact, a custody decision, once made and implemented, is considered res judicata upon the facts in existence or reasonably foreseeable when the decision was made. *Young v. Smith*, 193 Tenn. 480, 485, 246 S.W.2d 93, 95 (1952); *Steen v. Steen*, 61 S.W.3d at 327; *Solima v. Solima*, 7 S.W.3d 30, 32 (Tenn. Ct. App. 1998).

Despite a preference for continuing existing custody arrangements, the courts have recognized that the circumstances of children and their parents change. Accordingly, our statutes and decisions empower the courts to alter custody arrangements when intervening circumstances require modifications. Tenn. Code Ann. § 36-6-101(a)(1) (Supp. 2003). Thus, courts may modify an existing custody arrangement when required by unanticipated facts or subsequently emerging conditions. *Smith v. Haase*, 521 S.W.2d 49, 50 (Tenn.1975); *Adelsperger v. Adelsperger*, 970 S.W.2d at 485. In the interests of stability in the child's life, a court should not alter an existing custody arrangement until (1) it is satisfied either that the child's circumstances have changed in a material way since the entry of the presently operative custody decree or that a parent's circumstances have changed in a way that affects the child's well-being, (2) it has carefully compared the current fitness of the parents to be the child's custodian, and (3) it has concluded that changing the existing custody arrangement is in the child's best interests. *Kendrick v. Shoemake*, 90 S.W.3d 566, 570 (Tenn. 2002); *Blair v. Badenhope*, 77 S.W.3d 137, 150 (Tenn. 2002).

There are no bright line rules for determining when a change of circumstances should be deemed material enough to warrant changing an existing custody arrangement. *Kendrick v. Shoemake*, 90 S.W.3d at 570; *Taylor v. Taylor*, 849 S.W.2d at 327; *Solima v. Solima*, 7 S.W.3d at 32. These decisions turn on the unique facts of each case. As a general matter, however, the following principles illuminate the inquiry. First, the change of circumstances must involve either the child's circumstances or a parent's circumstances that affect the child's well-being. *Kendrick v. Shoemake*, 90 S.W.3d at 570.[3] Second, the changed circumstances must have arisen after the entry of the custody order sought to be modified. *Turner v. Turner*, 776 S.W.2d 88, 90 (Tenn. Ct. App. 1989). Third, the changed circumstances must not have been reasonably anticipated when the underlying decree was entered. *Adelsperger v. Adelsperger*, 970 S.W.2d at 485. Fourth, the change

---

[3] Over the years, the Tennessee Supreme Court has consistently declined to review this court's decisions holding that the changed circumstances that will trigger a consideration of a change in custody must involve changes in the child's circumstances rather than in either or both of the parents' circumstances. *Steen v. Steen*, 61 S.W.3d at 327; *Hoalcraft v. Smithson*, 19 S.W.3d at 829. The Court has now decided that a change in either parent's circumstances can also trigger a change of custody if the change "affects the child's well-being." *Kendrick v. Shoemake*, 90 S.W.3d at 570. While a change in the custodial parent's circumstances necessarily affects the child, a change in the noncustodial parent's circumstances may not. Because the court did not explicitly limit *Kendrick v. Shoemake* to changes in the custodial parent's circumstances, we must presume that the court now envisions that changes in a noncustodial parent's circumstances can justify a change of custody if the noncustodial parent can demonstrate that the change in his or her circumstances somehow affects the child.

in circumstances must affect the child's well-being in some material way. *Kendrick v. Shoemake*, 90 S.W.3d at 570; *Blair v. Badenhope*, 77 S.W.3d at 150; *Hoalcraft v. Smithson*, 19 S.W.3d at 829.

The person seeking to change an existing custody arrangement has the burden of demonstrating both that the child's circumstances have changed materially and that the best interests of the child require a change in the existing custody arrangement. *In re Bridges*, 63 S.W.3d 346, 348 (Tenn. Ct. App. 2001); *Musselman v. Acuff*, 826 S.W.2d 920, 922 (Tenn. Ct. App. 1991). The threshold question is whether there has been a material change in the child's circumstances. *Kendrick v. Shoemake*, 90 S.W.3d at 570; *Blair v. Badenhope*, 77 S.W.3d at 150; *Placencia v. Placencia*, 48 S.W.3d 732, 736 (Tenn. Ct. App. 2000). If the person seeking the change of custody cannot demonstrate that the child's circumstances have changed in some material way, the trial court should not re-examine the comparative fitness of the parents, *Caudill v. Foley*, 21 S.W.3d 203, 213 (Tenn. Ct. App. 1999), or engage in a "best interests of the child" analysis. Rather, in the absence of proof of a material change in the child's circumstances, the trial court should simply decline to change custody. *Hoalcraft v. Smithson*, 19 S.W.3d at 828.

Custody and visitation decisions often hinge on subtle factors, including the parents' demeanor and credibility during the divorce proceedings themselves. *Adelsperger v. Adelsperger*, 970 S.W.2d at 485. Accordingly, appellate courts are reluctant to second-guess a trial court's decisions. Trial courts must be permitted to exercise broad discretion in these matters, but they must still be required to base their decisions on the evidence and upon the appropriate application of the relevant legal principles. *D v. K*, 917 S.W.2d 682, 685 (Tenn. Ct. App. 1995). Thus, we review these decisions de novo on the record with a presumption that the trial court's findings of fact are correct unless the evidence preponderates otherwise. *Nichols v. Nichols*, 792 S.W.2d 713, 716 (Tenn. 1990); *Swett v. Swett*, No. M1998-00961-COA-R3-CV, 2002 WL 1389614, at *5 (Tenn. Ct. App. June 27, 2002) (No Tenn. R. App. P. 11 application filed); Tenn. R. App. P. 13(d).

### III.

After hearing extensive testimony from both parents, a teacher, two co-workers of Ms. Oliver, and the parties' daughter, the trial court found that Ms. Oliver had actively and willfully interfered with Dr. Oliver's visitation. The court further found that Ms. Oliver had alienated the parties' daughter from Dr. Oliver. Without explaining specifically whether the alienation rose to the level of a material change in circumstances or whether a change of custody would be in the child's best interests, the trial court declined to change custody and instead sought to remedy the alienating effects of Ms. Oliver's conduct by modifying the visitation agreement and by stressing that if Ms. Oliver violated the new agreement then the trial court would award primary physical custody of the parties' child to Dr. Oliver.

Dr. Oliver asserts that the trial court should have changed custody of the parties' daughter to him because the alienation of the child rose to the level of a material change in circumstances. According to Dr. Oliver, a finding of a material change in circumstance is all that is necessary to warrant a change of custody. Dr. Oliver perceives that the trial court's disposition of the change of custody question was the result of its desire to conclude the trial in a timely manner.

We find sufficient evidence in the record to support the trial court's determination that Ms. Oliver set upon a course of conduct intended to alienate the parties' daughter from Dr. Oliver. We further find that the alienation sufficiently meets the three factors set out in *Kendrick v. Shoemake* to constitute a material change of circumstances. The record reflects that the alienation occurred after the entry of the order sought to be modified and that it was neither known nor reasonably anticipated when the order was entered.

We now turn to the trial court's conclusion that Ms. Oliver's conduct has undermined the relationship between Dr. Oliver and the parties' daughter. The trial court observed that the child "is becoming a clone of the mother" and that the child is bitter and alienated as a result of Ms. Oliver's conduct. Taking the trial court's finding of facts with a presumption of correctness, as we must in the absence of a preponderance of evidence to the contrary, we find that the circumstances of this case demonstrate a material change in both the circumstances of the parties' daughter and Dr. Oliver.[4]

A finding of the existence of a material change of circumstances does not end the matter. Tenn. Code Ann. § 36-6-106(a) (2001) also requires a determination that changing a child's custody is in the best interests of the child. *Kendrick v. Shoemake*, 90 S.W.3d at 570; *see also Mayberry v. Mayberry*, No. M2002-00424-COA-R3-CV, 2003 WL 21392193, at *4 (Tenn. Ct. App. June 17, 2003) (No Tenn. R. App. P. 11 application filed); *Turner v. Purvis*, No. M2002-00023-COA-R3-CV, 2003 WL 1826223, at *6 (Tenn. Ct. App. Apr. 9, 2003) (No Tenn. R. App. P. 11 application filed); *Spatafore v. Spatafore*, No. E2001-02459-COA-R3-CV, 2002 WL 31728879, at *3 (Tenn. Ct. App. Dec. 5, 2002) (No Tenn. R. App. P. 11 application filed). Although Tenn. Code Ann. § 36-6-106(a) lists multiple factors to consider in making this determination, the ultimate purpose of the analysis is to promote the child's best interests by placing the child in an environment that will best serve the child's physical and emotional needs. *Parker v. Parker*, 986 S.W.2d 557, 562 (Tenn. 1999). It follows that the failure of the trial court to undergo a factor-by-factor analysis according to the statute is not reversible error per se, as long as the trial court reached a result that is in the child's best interests. *Mays v. Mays*, No. E2001-02630-COA-R3-CV, 2002 WL 31640565, at *3 (Tenn. Ct. App. Nov. 22, 2002) *perm. app. denied* (Tenn. May 5, 2003).

The record reflects the alienation between Dr. Oliver and the parties' daughter, as well as other distasteful, if not deplorable, conduct by Ms. Oliver. The evidence casts serious doubt concerning Ms. Oliver's ability or inclination to perform her parenting responsibilities, including her willingness to facilitate and encourage a close and continuing parent-child relationship between the parties' child and Dr. Oliver.[5] However, this circumstance alone is not sufficient in this case to require a finding that changing custody is currently in the child's best interests.

---

[4] A parent's failure to adhere to the requirements of a parenting plan can be considered a material change in circumstances. Tenn. Code Ann. § 36-6-101(a)(2)(B).

[5] *See* Tenn. Code Ann. § 36-6-106(a)(10).

The trial court properly took a broader view of the circumstances of this case. Although Dr. Oliver asserts that Ms. Oliver's inappropriate conduct requires a change of custody, changing custody "should never be used to punish or reward the parents, but rather should promote [the child's] best interests." *Gaskill v. Gaskill*, 936 S.W.2d at 629. Consequently, the rights, desires, and interests of Dr. Oliver become secondary to the best interests of the parties' child. *Whitaker v. Whitaker*, 957 S.W.2d 834, 837 (Tenn. Ct. App. 1997). We hold that Dr. Oliver has not met his burden of showing to the court how a change of custody is in the child's best interests.

The record contains no evidence regarding the effect on the parties' daughter of being forced to move in with Dr. Oliver. In addition, Dr. Oliver has not explained how he intended to address and remediate the currently soured relationship between him and his daughter. He has not explained the arrangements he has made for her care or the planned alterations in his life and schedule he is prepared to make to take on the responsibility of being a custodial parent. Without this sort of evidence, we, like the trial court, have no reliable way of assessing whether changing custody would ultimately be in the child's best interests.

A change of custody is the most drastic remedy to enforcing visitation and must clearly be in the best interests of the child. Consequently, it should only be used in extreme situations. *Legal and Mental Health Perspectives on Child Custody Law* § 19.16, at 235. It is no surprise that most states' laws discourage judges from changing custody unless all other means have been exhausted. *Legal and Mental Health Perspectives on Child Custody Law* § 20:5, at 246. Despite Ms. Oliver's inappropriate conduct, a change of custody should be used only as a last resort.

In circumstances where one parent has purposely set out to alienate a child from the other parent, professional assistance from a psychologist or psychiatrist may be required to limit the damage and to prevent it from becoming impervious to improvement. This necessarily involves counseling for the child, and sometimes, the parent to address the origins and history of the behavior. Requiring such counseling in this case would certainly be an appropriate and less drastic measure than changing the current custody arrangements.

## IV.

We affirm the portion of the order denying Dr. Oliver's change of custody and remand the case to the trial court for further proceedings consistent with this opinion. We tax the costs of this appeal in equal proportions to Elizabeth D. Oliver and Marc L. Oliver for which execution, if necessary, may issue.

 

                                                 _____
WILLIAM C. KOCH, JR., J.