# IN THE COURT OF APPEALS OF TENNESSEE
# AT NASHVILLE
### March 10, 2010 Session

## JAMES MORTON BURRIS v. LISA ESTES BURRIS

**Direct Appeal from the Chancery Court for Rutherford County**
**No. 06-0346DR      Royce Taylor, Judge**

_____

**No. M2009-00498-COA-R3-CV - Filed April 7, 2010**

_____

This is a divorce case ending a twenty-one year marriage. Following a three day trial, the trial court entered a parenting plan naming Appellee/Father as the primary  residential parent, granting Father decision making authority, and providing Appellant/Mother with visitation. The trial court also entered judgment against Mother for retroactive child support since the parties separation and for marital debts that had been paid by the Father during the separation. Discerning no error, we affirm.

### Tenn. R. App. P. 3. Appeal as of Right; Judgment of the Chancery Court Affirmed

J. STEVEN STAFFORD, J., delivered the opinion of the Court, in which ALAN E. HIGHERS, P.J., W.S.,  and DAVID R. FARMER. J., joined.

Andrew M. Cate, Nashville, Tennessee, for the appellant, Lisa Estes Burris.

Darrell L. Scarlett, Murfreesboro, Tennessee, for the appellee, James Morton Burris.

### OPINION

This is the second divorce action between the Appellee, James Morton Burris ("Mr. Burris") and Appellant, Lisa Estes Burris ("Mrs. Burris"). In 2003, Mrs. Burris filed a complaint for divorce which was dismissed in 2005 when the parties reconciled. Both prior to and subsequent to the reconciliation, Mrs. Burris engaged in inappropriate conduct which eventually resulted in Mrs. Burris admittedly engaging in prostitution in at least three different states. On March 1, 2006, Mrs. Burris was arrested for prostitution in Nashville, Tennessee, following an investigation by authorities. Following her arrest, the parties marital home was searched pursuant to a search warrant and evidence of her activities was found on the family computer and on Mrs. Burris' personal laptop. Based on the search of the home, the authorities also concluded that the nude photographs that appeared on Mrs. Burris'

website advertising her services had been taken throughout the marital home.

This action began when Mr. Burris filed a complaint for divorce against Mrs. Burris, on March 6, 2006, alleging inappropriate marital conduct and adultery. The parties were married for approximately twenty-one years. There are three minor children as a result of the marriage. Mrs. Burris filed an answer and counter-complaint on March 9, 2006, denying inappropriate conduct on her part, denying that she was guilty of adultery, and asserting the ground of irreconcilable differences. The trial court appointed a Special Master to hear all interim matters on March 9, 2006.

Prior to filing his complaint for divorce, Mr. Burris obtained a restraining order on March 2, 2006, restraining Mrs. Burris from coming about him or the children. A hearing was held on the continuation of the restraining order on March 13, 2006, before the Special Master. The Special Master issued a report ordering that the minor children be immediately enrolled in counseling, that Mrs. Burris have supervised visitation one day per week for four hours, that the supervision be paid for by husband and allowing him to seek reimbursement, that temporarily Mrs. Burris would pay no child support, and that Mrs. Burris cannot attend the children's ball games or take the oldest child out of state. The Special Master also ordered that a hearing be reset for thirty days and that at the next hearing the children's counselor shall present her opinions. The trial court entered an order adopting the findings of the Special Master on April 6, 2006.

Prior to the final hearing, there were extensive motions made by both parties and orders entered. The majority of these motions related to Mrs. Burris' visitation with the children. The parties also dealt with the sale of the marital home, which was eventually ordered to be auctioned off; Mrs. Burris' car, which she was granted title to; and the division of personal property.

A final hearing was held on February 26 and 27, 2008, and October 15, 2008. Following the presentation of proof, the trial court issued its ruling from the bench. In ruling the trial court stated that he was adopting Mr. Burris' proposed parenting plan which provided that Mrs. Burris would have unsupervised visitation every other weekend and that Mr. Burris would be the primary residential parent. By adopting Mr. Burris' proposed parenting plan, the trial court also granted Mr. Burris all major decision making authority regarding the children. The trial court specifically noted that visitation would not be increased until Mrs. Burris completed a psychosexual evaluation, finding that Mrs. Burris had an ongoing problem that started in 2003, which had exacerbated and expanded since. The trial court specifically found that neither the publicity nor the investigation surrounding Mrs. Burris' prostitution and arrest was due to the fault of Mr. Burris. The trial court found that Mrs. Burris showed a lack of remorse when she was arrested and did not indicate that

there was anything wrong with her prostitution. The trial court ordered Mrs. Burris to pay Mr. Burris retroactive child support from the date of the filing of the complaint, including her share of medical expenses. The trial court found that the total amount of retroactive child support due was $18,882, and entered a judgment against Mrs. Burris in that amount. The trial court also ordered that Mrs. Burris reimburse Mr. Burris for the money he paid towards her life insurance and car insurance premiums. He further ordered that she reimburse Mr. Burris for one-half of the amount he paid by garnishment on a judgment held by her parents against both parties. The trial court found that this totaled $4,148. However, the trial court reduced this amount by $1,600 after finding that Mr. Burris maintained $3,200 in a Roth IRA which he bankrupted. Accordingly, the trial court entered a judgment against Mrs. Burris for $2,548. This resulted in a total judgment of $21,430 against Mrs. Burris. An order and permanent parenting plan were entered reflecting these decisions on December 11, 2008.

Mrs. Burris filed a motion to alter or amend on January 9, 2009, requesting that the trial court reopen the proof. The trial court entered an order on February 13, 2009, denying Mrs. Burris' motion. Mrs. Burris timely filed a notice of appeal on March 3, 2009. On appeal, Mrs. Burris raises the following issues, as we restate them:

1.      Whether the evidence preponderates against the trial court's findings and conclusions with regard to establishing a permanent parenting plan?

2.      Whether the trial court erred in awarding Mr. Burris a judgment against Mrs. Burris for retroactive child support and a portion of the marital expenses he paid?

Since this case was tried by the court sitting without a jury, we review the case *de novo* upon the record with a presumption of correctness of the findings of fact by the trial court. Unless the evidence preponderates against the findings, we must affirm, absent error of law. See Tenn. R. App. P. 13(d). Furthermore, when the resolution of the issues in a case depends upon the truthfulness of witnesses, the trial judge who has the opportunity to observe the manner and demeanor of the witnesses while testifying is in a far better position than this Court to decide those issues. See *McCaleb v. Saturn Corp*., 910 S.W.2d 412, 415 (Tenn.1995); *Whitaker v. Whitaker*, 957 S.W.2d 834, 837 (Tenn.Ct.App.1997). "If the trial court's factual determinations are based on its assessment of witness credibility, this Court will not reevaluate that assessment absent clear and convincing evidence to the contrary." *Heffington v. Heffington,* No. M2009-00434-COA-R3-CV, 2010 WL 623629 (Tenn. Ct. App. Feb. 19, 2010).

**Parenting Plan**

In any action for absolute divorce involving a minor child, the trial court must

incorporate into its final decree a permanent parenting plan. Tenn. Code Ann. § 36-6-404(a). A permanent parenting plan is defined as a "written plan for the parenting and best interests of the child, including the allocation of parenting responsibilities and the establishment of a residential schedule, as well as an award of child support...." Tenn. Code Ann. § 36-6-402(3)(2000). In making its decision regarding entry of a permanent parenting plan, the trial court should consider the factors set out at Tenn. Code Ann. § 36-6-404(b) (2005).[1] While

_____

[1]Those factors are:

(1) The parent's ability to instruct, inspire, and encourage the child to prepare for a life of service, and to compete successfully in the society that the child faces as an adult;

(2) The relative strength, nature, and stability of the child's relationship with each parent, including whether a parent has taken greater responsibility for performing parenting responsibilities relating to the daily needs of the child;

(3) The willingness and ability of each of the parents to facilitate and encourage a close and continuing parent-child relationship between the child and the other parent, consistent with the best interests of the child;

(4) Willful refusal to attend a court-ordered parent education seminar may be considered by the court as evidence of that parent's lack of good faith in these proceedings;

(5) The disposition of each parent to provide the child with food, clothing, medical care, education and other necessary care;

(6) The degree to which a parent has been the primary caregiver, defined as the parent who has taken the greater responsibility for performing parental responsibilities;

(7) The love, affection, and emotional ties existing between each parent and the child;

(8) The emotional needs and developmental level of the child;

(9) The character and physical and emotional fitness of each parent as it relates to each parent's ability to parent or the welfare of the child;

(10) The child's interaction and interrelationships with siblings and with significant adults, as well as the child's involvement with the child's physical surroundings, school, or other significant activities;

(continued...)

-4-

the trial court is obligated to consider all of the relevant factors in reaching its decision, it is not required to list in its opinions or orders each of those factors, nor its conclusion as to how a factor affected the overall determination. *Coley v. Coley*, M2007-00655-COA-R3-CV, 2008 WL 5206297, *6 (Tenn. Ct. App. December 12, 2008).

Decisions on parenting arrangements are some of the most important decisions a trial court will make. It is well settled that, in matters of support, child custody, visitation and related issues, trial courts are given broad discretion; consequently, appellate courts are reluctant to second-guess a trial court's determinations regarding these important domestic matters. Tenn. Code Ann. § 36-6-101(a)(1) (2005); *Parker v. Parker*, 986 S.W.2d 557, 563 (Tenn.1999); *Hoalcraft v. Smithson*, 19 S.W.3d 822, 827 (Tenn. Ct. App.1999). It is not the role of this Court to tweak a parenting plan in hopes of achieving what we deem a more reasonable result. A trial court's decision will not be overturned absent an abuse of discretion. *Eldridge v. Eldridge*, 42 S.W.3d 82, 85 (Tenn. 2001). A trial court abuses its discretion when it has applied an incorrect legal standard or has reached a decision which is against logic or reasoning that caused an injustice to the party complaining. *Id.*

Mrs. Burris submits that the preponderance of the evidence does not support a finding that the parenting plan entered by the trial court is in the best interests of the children. She

---

[1](...continued)

> (11) The importance of continuity in the child's life and the length of time the child has lived in a stable, satisfactory environment;
>
> (12) Evidence of physical or emotional abuse to the child, to the other parent or to any other person;
>
> (13) The character and behavior of any other person who resides in or frequents the home of a parent and such person's interactions with the child;
>
> (14) The reasonable preference of the child if twelve (12) years of age or older. The court may hear the preference of a younger child upon request. The preference of older children should normally be given greater weight than those of younger children;
>
> (15) Each parent's employment schedule, and the court may make accommodations consistent with those schedules; and
>
> (16) Any other factors deemed relevant by the court.

Tenn. Code Ann. § 36-6-404 (2005).

requests that we reverse the trial court and enter her proposed parenting plan which designates her as the primary residential parent and awards Mr. Burris 120 days of parenting time a year. After reviewing the record, we disagree with Mrs. Burris' contention and decline to reverse the order of the trial court.

Following three days of hearings, the trial court adopted the parenting plan proposed and filed with the trial court prior to the hearing, by Mr. Burris. Under this plan, Mr. Burris was designated as the primary residential parent and awarded decision making authority. Mrs. Burris was granted unsupervised visitation every other weekend. The parties would alternate holidays and Mrs. Burris was awarded three days with the children around Christmas. At the conclusion of the trial, Mr. Burris requested that the trial court order supervised visitation. The trial court denied this request.

The trial court did not specifically state his findings on each factor in Tennessee Code Annotated §36-6-404 or how those findings affected his overall determination. However, the trial court is not required to do so. *Coley,* 2008 WL 5206297 at *6. The trial court did make specific factual findings in explaining his decision. Specifically, the trial court found that Mrs. Burris had an ongoing problem that began in 2003 which problem exacerbated and expanded, resulting in her prostitution conviction. The trial court held that based on this problem it would not expand visitation until Mrs. Burris submitted to a psychosexual evaluation. The trial court specifically found that the publicity related to Mrs. Burris' arrest was not the fault of Mr. Burris, nor could the criminal investigation be attributed to him. Further, the trial court found that Mrs. Burris showed no remorse for her actions upon being arrested, nor did she indicate she believed there was anything wrong with her actions.

After reviewing the record, we do not find that the evidence preponderates against the trial court's findings. Mrs. Burris admitted at trial that she engaged in prostitution in at least three different states. She argued at trial that she was not blaming anyone else nor making excuses, yet at trial and on appeal, she contends that she was forced into prostitution to raise funds for a retainer fee. Mrs. Burris admitted at trial that she never thought about the possibility of exposing the children to a disease due to her prostitution, nor did she think about the possible effect on the children if she was caught. Moreover, Mrs. Burris admitted that at times she would hire a babysitter to watch the children so that she could meet her clients. Mrs. Burris also allowed another woman, also engaged in prostitution, to come into the family home, and to have dinner with her and the children. The detective that investigated Mrs. Burris' prostitution testified that she showed no remorse when she was arrested nor did she indicate that she felt she had done anything wrong. The detective further testified, contrary to Mrs. Burris' assertions, that his investigation into Mrs. Burris began

prior to being contacted by Mr. Burris and that Mr. Burris played no role in the criminal investigation. Moreover, the detective testified that he and his fellow officers were able to conclude that the nude photographs of Mrs. Burris found online had been taken in various places throughout the parties' home.

As to which parent was the primary care giver of the children, the record reflects a "he said- she said" situation. Mrs. Burris submits that prior to her arrest, she was the party taking care of the children, feeding, bathing, clothing them, participating in school activities, and helping with homework, while Mr. Burris was working. She contends she attended most of the children's sporting events. Mr. Burris submits the opposite, that he was the party taking care of the children while Mrs. Burris stayed up all hours of the night engaging in online chats and phone sex with other men. He further submits that Mrs. Burris attended only a few of the children's sporting events. Mrs. Burris presented the testimony of her niece, sister, a friend from church, and a college friend to support her contention that she was a good, loving mother. Mr. Burris presented the testimony of a current neighbor, who explained that she and Mr. Burris help each other with taking their respective children to school and that she is willing to help Mr. Burris in the future. Mr. Burris also presented testimony of a former neighbor who testified that he found the youngest child, who was approximately two and a half years old at the time, wandering around a construction site unsupervised in 2003. The neighbor testified that when he took the child home, Mrs. Burris was at home and that she did not say thank you for returning the child. Unfortunately, the majority of the trial was spent with both sides attempting to paint the other parent in the worst possible light. Mr. Burris focused on Mrs. Burris' prostitution and other questionable activities. Mrs. Burris argued that her husband emotionally, verbally and financially abused her and that he had at some point in his life viewed pornography and visited strip clubs. Mrs. Burris even had her niece and sister testify to support her allegations. Based on the trial court's finding that Mrs. Burris has an ongoing problem that began in 2003, the trial court appears to have credited Mr. Burris' testimony over Mrs. Burris and her family. The evidence does not preponderate against the trial court's findings.

The record reflects that for approximately two and a half years prior to the trial court's decision, the children had been with Mrs. Burris for at most two days a week. During the majority of this time, visitation was supervised. Further, during this time Mr. Burris was solely responsible for providing for and meeting the needs of the children, and making decisions on their behalf. During this time the children have been confronted with publicity relating to their mother's arrest. The children have not surprisingly been affected by the events they have been forced to endure, but fortunately seem to have adjusted. It is obvious from Mother's statements and actions that she has some continuing issues she needs to address, which could affect her ability to parent the children.

Mrs. Burris argues that the trial court erred in considering allegations that she engaged in phone sex while in bed with the child, that she engaged in inappropriate conversations online with other men, failed to supervise the children, and other similar allegations, as Father admitted that these acts all occurred prior to the parties' reconciliation in 2005. We find no merit to Mrs. Burris' argument. While Mr. Burris may be prohibited from asserting conduct that occurred prior to the reconciliation as a ground for divorce in this action, the trial court may still consider such conduct in order to make a determination as to the best interests of the children. This Court has no doubt that both parents love their children. They apparently have three well behaved, talented children, who through no fault or action of their own have been placed in a precarious and an extremely unfortunate situation. We hope that in the future both parents can put their problems with each other aside, and instead focus on the best interests of the children. However, based on the evidence presented, we cannot say that it preponderates against the trial court's factual findings, nor can we find that the trial court abused its discretion. Accordingly, we affirm the trial court's adoption of Mr. Burris' proposed parenting plan.[2]

### Judgments

Mrs. Burris also contends that the trial court erred in awarding Mr. Burris a judgment against her for retroactive child support and for a portion of the marital expenses. Because an award of child support and a division of marital debt involve different standards, we will address each separately.

### *Child Support*

In the final decree, the trial court entered a judgment against Mrs. Burris for retroactive child support back to the date of the filing of the complaint. The trial court found that Mrs. Burris owed $16,275 in retroactive child support and $2,607 for her share of the children's medical expenses, for a total judgment for retroactive child support of $18,882. The trial court held that Mrs. Burris owed child support from March 13, 2006 through the date of the trial or thirty-one months of child support. Further, the trial court found that Mrs. Burris had an earning capacity of $2,500 a month or $30,000 a year, and that Mr. Burris had an earning capacity of $6,064.83 a month or $72,777.96 a year. Using these incomes and applying the child support guidelines, the trial court found that Mrs. Burris owed $525 a

---

[2]We note that at oral arguments, the parties indicated that there had been some modification to this plan since entry of the order and a subsequent appeal of that modification. There is no indication of modification in the record and therefore we reviewed the parenting plan as it stands in the record. There is a separate appeal pending in this same action.

month in child support. Mrs. Burris does not dispute the trial court's finding on either of the parties' income or the finding that based on these incomes she owes $525 a month in child support.

Mrs. Burris contends that pursuant to Tennessee Code Annotated § 36-5-101(e)(1)(A), the trial court should have deviated from the guidelines as application of the guidelines is "unjust or inappropriate in order to provide for the best interest of the child or children or the equity between the parties, under the circumstances of this case." She bases her assertion in part on the report of the Special Master which was adopted by the trial court on April 6, 2006, holding that "[t]emporarily mother shall pay no child support." Setting child support and determining whether a deviation should apply rests within the discretion of the trial court and will not be overturned unless an abuse of discretion is shown. *State ex rel. Vaughn v. Kaatrude*, 21 S.W.3d 244, 248 (Tenn. Ct. App. 2000).

We cannot find that the trial court abused its discretion in declining to deviate from the guidelines. First, the order she cites was entered as a result of the hearing held on March 13, 2006, on the temporary restraining order. It was not a hearing to determine temporary support. Second, and more importantly, the order provides that Mrs. Burris will not pay child support temporarily. It does not make a finding that she does not *owe* any child support. Each parent has a duty to support their children until each child reaches the age of eighteen. Tenn. Code. Ann. § 36-4-102(a)(2). Further, the trial court has the authority to enter a judgment retroactively awarding child support from the date of the parties separation. Tenn. Code. Ann. § 36-5-101(e) (2005). Mrs. Burris admits that she did not pay anything towards the support of the children during the pendency of the divorce. In this case, the trial court declined to find that justice or equity required a deviation and ordered that Mrs. Burris pay child support based on the evidence presented as to her earning capacity. Finding that the trial court did not abuse its discretion, we affirm the trial court's judgment to Mr. Burris for retroactive child support.

*Marital Expenses*

Mrs. Burris' final contention is that the trial court erred in entering a judgment against her for marital expenses paid by Mr. Burris during the pendency of the divorce. At the conclusion of the hearings, the trial court held that Mrs. Burris owed her husband for the money he paid during the pendency of the divorce for her car insurance and her life insurance premiums. The trial court also held that Mr. Burris was entitled to one-half of the amount that Mrs. Burris' parents garnished from his paycheck in executing a judgment they held

-9-

against both Mr. Burris and Mrs. Burris. The trial court found that this totaled $4,148. However, the trial court reduced this amount by $1,600, finding that prior to his bankruptcy, Mr. Burris had a Roth IRA in the amount of $3,200. Accordingly, the trial court entered judgment against Mrs. Burris in the amount of $2,548.

Dividing a marital estate is not a mechanical process; the goal is to fashion an equitable division considering the non-exclusive factors set forth in Tennessee Code Annotated § 36-4-121(c). Trial courts have "wide latitude in fashioning an equitable division of marital property." *Altman v. Altman*, 181 S.W.3d 676, 683 (Tenn. Ct. App. 2005). The division of marital property is rooted in equity, and a division of marital property is not rendered inequitable merely because it is not precisely equal, *Cohen v. Cohen*, 937 S.W.2d 823, 832 (Tenn. 1996); *Ellis v. Ellis*, 748 S.W.2d 424, 427 (Tenn. 1988) or because each party does not receive a share or portion of each marital asset. *Cohen*, 937 S.W.2d at 833 (citing *Brown v. Brown*, 913 S.W2d 163, 168 (Tenn. Ct. App. 1994)). We will defer to the trial court's division of the marital estate unless it is inconsistent with the factors in Tenn. Code Ann. § 36-4-121(c) or not supported by a preponderance of the evidence. *Woods v. Woods*, No. M2002-01736-COA-RS-CV, 2005 WL 1651787, * 4(Tenn. Ct. App. July 12, 2005).

In her brief, Mrs. Burris disingenuously argues that the trial court erred in entering a judgment against her because Mr. Burris was able to walk away from the debts on the marital home after filing bankruptcy. Mrs. Burris would have this Court believe that not only is she liable to Mr. Burris on this judgment, but that she was left solely responsible for debts relating to the marital home in excess of $271,000. This is not an accurate depiction of her situation. First, in her brief, Mrs. Burris fails to explain that she was not liable on either mortgage that was held on the parties home. Mrs. Burris admitted to this at trial. Moreover, Mrs. Burris fails to mention that the home was actually auctioned off in foreclosure. At the point of foreclosure, Mrs. Burris could have walked away from the debt on the marital home. Instead, her parents bought the home, in which she is now living and she is allegedly paying her parents back. At trial, Mrs. Burris admitted to this as well. Therefore, any liability Mrs. Burris has based on the marital home stems solely from her own actions and decisions, and in no way relates to Mr. Burris or the marital estate.

At trial, there was very little proof presented as to the marital property and debts. Prior to trial, the parties divided the personal property. According to the order entered on January 24, 2007, the personal property of the parties was divided equally. Also, prior to trial, Mrs. Burris was awarded her car. The only other marital asset mentioned at trial was a Roth IRA with a balance of $3,200 that Mr. Burris held prior to his bankruptcy. The trial

court divided the value of the Roth IRA in half by reducing the judgment against Mrs. Burris by $1,600. The debts the trial court held Mrs. Burris responsible for were marital debts. The car insurance and life insurance premium were debts paid by Mr. Burris on behalf of Mrs. Burris prior to entry of the final decree. There is no evidence in the record that these debts were discharged in Mr. Burris' bankruptcy. Also, during the pendency of the divorce, Mrs. Burris' parents executed a judgment that they held against both parties by garnishing Mr. Burris' paycheck. This judgment was a marital debt, of which a portion was paid by Mr. Burris. The trial court divided the portion paid in half and held that Mrs. Burris was liable for her half of the amount paid. The trial court essentially divided the marital estate, including the debts and assets, in half. We do not find that the trial court's division of marital property resulting in a judgment against Mrs. Burris preponderates against the evidence. Accordingly, we affirm the entry of the judgment against Mrs. Burris.

## Conclusion

For the foregoing reasons, we affirm the decision of the trial court. Both Mr. Burris and Mrs. Burris request attorney fees for this appeal. Using our discretion, we decline to award attorney fees to either party. Costs of this appeal are assessed against the Appellant, Lisa Estes Burris, and her surety.

_____

J. STEVEN STAFFORD, J.

-11-